UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

NASEEM S. STANAZAI,

*Plaintiff*,

v.

BROADCASTING BOARD OF
GOVERNORS,

*Defendant*.

Civil Action No. 17-2653 (RDM)

## MEMORANDUM OPINION AND ORDER

The matter is before the Court on Defendant Broadcasting Board of Governors' ("the Board") motion for summary judgment. Dkt. 15. Plaintiff Naseem Stanazai, an international broadcaster with the Pashto Language Service, is suing the Board, a federal agency that administers the Voice of America ("VOA"), for unlawful discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII") and the Age Discrimination in Employment Act of 1967 ("ADEA"). This is one of five cases brought on behalf of a group of international broadcasters alleging that the Board has engaged in a pattern of discrimination against them based on their age, national origin, and protected equal employment opportunity ("EEO") activity, including a prior case in which Stanazai asserted claims similar to the ones he raises here.[1] For the reasons set forth below, the Court will **GRANT** in part and **DENY** in part the Board's motion for summary judgment.

---

[1] *See Achagzai v. Broadcasting Bd. of Governors*, 109 F. Supp. 3d 67 (D.D.C. 2015) (*Achagzai I*); *see also Mohmand v. Broadcasting Bd. of Governors*, No. 17-618, 2018 WL 4705800 (D.D.C. Sept. 30, 2018); *Shah v. Broadcasting Bd. of Governors*, No. 18-1328 (D.D.C.) (filed June 4, 2018); *Khadem v. Broadcasting Bd. of Governors*, No. 18-1327 (D.D.C.) (filed June 4, 2018).

# I. BACKGROUND

Plaintiff Naseem Stanazai is a 65-year-old employee of the Pashto Language Service, a division of the VOA. Dkt. 15-6 at 1–2 (EEO Counselor's Rpt.). At the time of filing this lawsuit, he was employed by the VOA as an international broadcaster/copy editor and compensated at General Schedule pay scale ("GS") level 12. *Id.* at 1 (EEO Counselor's Rpt.); *see also* Dkt. 15-2 at 1 (SUMF ¶ 2).

This is not the first case that Stanazai has filed before this Court concerning his employment with the Pashto Language Service. In 2014, Stanazai and four other international broadcasters sued the Board, alleging that they had been subjected to disparate treatment, retaliation, and a hostile work environment on the basis of their age, national origin, and protected EEO activity, in violation of Title VII and the ADEA. *See Achagzai v. Broadcasting Bd. of Governors*, 170 F. Supp. 3d.164, 169–70 (D.D.C. 2016) (*Achagzai II*). Stanazai claimed, in particular, that, "after he began voicing his displeasure with . . . various changes" that the VOA instituted as part of its "New Format," the then-Managing Editor of the Pashto Language Service, Mohammed Ibrahim Nasar, "retaliated and discriminated against him by manipulating his broadcasting schedule to give additional responsibilities" to younger, "less-qualified colleagues" and by "remov[ing] him from more desirable assignments." *Achagzai v. Broadcasting Bd. of Governors*, 308 F. Supp. 3d 396, 400 (D.D.C. 2018) (*Achagzai III*). The Court entered summary judgment in favor of the Board on the ground that none of the "actions at issue constitute[d] an 'adverse employment action' or 'materially adverse action' for purposes of Title VII and the ADEA." *Id.* at 399.

It is difficult to pinpoint the precise acts or decisions that Stanazai challenges in the current lawsuit. He alleges that the VOA "implemented a change in policy" known as the "New

Format" in 2010 and that this policy has, generally, harmed "senior staff" and, specifically, "resulted in excluding [him] from being considered for any of the management positions for which he applied, even though he [has been] tasked with carrying out the management tasks, without the promotion." Dkt. 1 at 4 (Compl. ¶ 5). He further alleges that VOA management "tried to force [him] to retire," subjected him "to a hostile work environment," refused to promote him to a GS 13 level "during a benchmarking session in 2016/2017," and failed to promote him to various management positions in 2010, 2013, 2014 and 2015. *Id*. at 4–5 (Compl. ¶¶ 6–13). Then, in what appears to be his operative factual allegation, Stanazai alleges:

> Mr. Stanazai was continuously discriminated against based on his national origin, age, and sex (male) and in reprisal for participating in protected EEO activity, *when as of October 7, 2016, again he was treated less favorably than[] similarly situated employees when he was overlooked for all positions that came available* to include an employee who lacked the necessary qualifications for the position.

*Id.* at 6 (Compl. ¶ 15) (emphasis added).

Although Stanazai refers to his national origin and sex in his factual allegations, his substantive claims refer only to his age and protected EEO activity. Count One alleges that the Board discriminated against him based on his age in violation of Title VII "by subjecting him to constant harassment, work conditions which were humiliating and by [attempting to] forc[e] him to retire before he [was] ready to retire," and by "creating a schedule that [he] could not perform." *Id.* (Compl. ¶¶ 16–17). He further alleges that, when he "complained to management[,] he was retaliated against with [an] even more difficult and straining schedule." *Id.* (Compl. ¶ 17). Count Two alleges that the Board "intentionally discriminated against [Stanazai] because of his age in violation of the ADEA by subjecting him to conditions and terms of employment that were not enforced on younger employees." *Id.* at 7 (Compl. ¶ 20). In particular, Stanazai alleges that "[y]ounger employees were promoted over him" as a result of

3

"[t]he [N]ew [F]ormat," and that "management harassed and targeted the senior staff" and attempted "to force them to . . . leave their positions." *Id.* (Compl. ¶¶ 20–22). Finally, Count Three alleges that he was subjected to unlawful retaliation for engaging in protected EEO activity in violation of the ADEA.[2] *Id*. at 7–8 (Compl. ¶¶ 24–25, 27–28). Stanazai fails to single out any specific acts that, in his view, constituted unlawful retaliation but, instead, alleges that the Board's conduct, "in its totality and cumulative manner," rises to the level of "unlawful, direct, intentional, adverse, tangible, retaliatory and discriminatory employment actions prohibited by the ADEA." *Id*. at 8 (Compl. ¶ 27).

Stanazai's administrative EEO complaint provides some additional clarity regarding the substance of his current claims. Before Stanazai filed his formal, administrative complaint, the EEO counselor assigned to the dispute described Stanazai's claim of discrimination as follows:

> He alleges that on October 7, 2016, he was not selected by Mr. Akbar Ayazi, Director, VOA Asia Division, South and Central for any position on the new management of the VOA Afghan. Two of his colleagues were promoted. One, Ms. Shaista Sadat Lamih (female; Afghanistan descent; Islam) was promoted to [m]anaging [e]ditor and her position was not announced before her appointment on October 7, 2016. Another, Ms. Lina Rozbih (female; Afghanistan descent; Islam) was promoted to the position vacated by Ms. Lamih. . . . [H]e [also] applied for the job which Ms. Rozbih[] got, but he was unsuccessful.
>
> Mr. Stanazai alleges that, despite his education and experience, he was not given the opportunity to be promoted. He alleges that he was discriminated against because he is in active litigation in a prior EEO complaint against [the Board] based on race and age. He alleges that the current issues relate back as early as 2010 and into his 2013 complaint allegations. Therein, he related that he had sought upward mobility for years because of his nationality and age,

---

[2] This count also includes two citations to Title VII. The first of those citations, however, does not allege a Title VII claim but, rather, alleges that the Board violated the ADEA by retaliating against Stanazai for engaging in activity protected by Title VII and the ADEA. Dkt. 1 at 7–8 (Compl. ¶ 24). The second citation also fails to allege that the Board violated Title VII by engaging in retaliatory conduct but, rather, alleges that the Board engaged in age discrimination in violation of Title VII. *Id.* at 9 (Compl. ¶ 28).

4

and now, in retaliation for complaining, again he has been overlooked for promotion.

Dkt. 15-6 at 2–3 (EEO Counselor's Rpt.); *see also id.* at 7 (EEO Counseling Issues Presented).

Stanazai's formal EEO complaint repeats this characterization of his claim. He alleged that he "was overlooked" for a managerial position when, on October 7, 2016, the VOA announced a "new service management structure." Dkt. 15-7 at 2. Instead, one of the "position[s] of [m]anaging [e]ditor went to Shaista Sadat Lamih," and, before that, "the other position of [m]anaging [e]ditor went to Lina Rozbih." *Id.* Stanazai further claimed that Rozbih was not qualified for the managing editor position; that, although Stanazai had applied for the position, he was "never given any consideration for the promotion;" that Lamih was "secretly promoted;" and that the deciding official declined to award the position to Stanazai in retaliation for having engaged in protected EEO activity. *Id.* Four senior editor positions were also assigned to other individuals. *See* Dkt. 15-3 at 5 (Ayazi Email).

The Board's Office of Civil Rights then "accepted" and investigated the following claim:

> Whether [Stanazai] was continuously discriminated against based on his national origin (Afghanistan), sex (male), age (YOB: 1953), and in reprisal for participating in protected EEO activity when as of October 7, 2016, he was treated less favorably than similarly situated employees when he was overlooked for all positions that came available, to include, promoting an employee who lacked the necessary qualifications for one of the positions.

Dkt. 15-8 at 3 (EEO Investigation Rpt.). Neither party has provided any evidence of the results of that investigation. On December 11, 2017, Stanazai filed the present suit, seeking "back pay, future pay, interest and all damages to which he is entitled" for "work that he performed" and "damage to his professional work history and reputation." Dkt. 1 at 9–10 (Compl. Damages, Prayer). The Board now moves for summary judgment on all three claims. Dkt. 15.

## II. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 56, the Court may grant summary judgment only when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it could affect the outcome of the litigation, *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), and a dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party, *see Scott v. Harris*, 550 U.S. 372, 380 (2007). The Court must view the evidence in the light most favorable to the nonmoving party and must draw all reasonable inferences in that party's favor. *Talavera v. Shah*, 638 F.3d 303, 308 (D.C. Cir. 2011). The moving party "bears the initial responsibility" of "identifying those portions" of the record that "demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has carried that burden, the opposing party must come forward with declarations or other evidence showing that there is a genuine issue of material dispute for the trier of fact. *Grimes v. District of Columbia*, 794 F.3d 83, 94–95 (D.C. Cir. 2015).

## III. ANALYSIS

The Board argues that it is entitled to summary judgment because "there was no managing-editor position that was vacant for which [Stanazai] was qualified in October 2016, and his other alleged nonselections and adverse actions have not been exhausted." Dkt. 15-1 at 8. For the reasons explained below, the Court largely agrees, but will decline to grant summary judgment in favor of the Board on Stanazai's claim that he was passed over for a senior editor position in October 2016.

A.  **Title VII**

Stanazai labels the first count in his complaint "Discrimination Under Title VII" and alleges that the Board "intentionally discriminated against [him] based on his age, in violation of Title VII." Dkt. 1 at 6 (Compl. ¶ 16). But, as this Court has noted in related cases, Title VII proscribes only discrimination based on an individual's "race, color, religion, sex, or national origin"—not age. 42 U.S.C. § 2000(e)-2(a); *see also Mohmand*, 2018 WL 4705800, at *3. As a result, to the extent that Stanazai alleges discrimination on the basis of his age (or retaliation for complaining about age discrimination) in violation of Title VII, his claims fail as a matter of law.

Although Stanazai also alludes to national origin and sex discrimination in his complaint, he does so only vaguely and in passing, not in a cause of action. He merely alleges in one sentence that he has been subjected to "continuous[] discriminat[ion] . . . based on his national origin, age, and sex (male)." Dkt. 1 at 6 (Compl. ¶ 15). This singular reference by a party represented by counsel is insufficient to state a claim for national-origin or sex discrimination; to the contrary, the operative counts of Stanazai's complaint allege only age discrimination and/or retaliation for engaging in protected EEO activity. *See* Fed. R. Civ. P. 8(a); *see also Brown v. Wash. Metro. Area Transit Auth.*, 164 F. Supp. 3d 33, 35 (D.D.C. 2016) (complaint fails Rule 8(a) where it does not allege "any facts that could plausibly support a claim for relief"). The Court will, accordingly, turn to Stanazai's ADEA claims.

B.  **ADEA Claims**

1.  *Res Judicata*

As a threshold matter, Stanazai's complaint is peppered with references to "[t]he hostile work environment" at the VOA and the "discriminatory treatment" he was subjected to in the form of a "difficult and straining schedule" he "could not perform." *See, e.g.*, Dkt. 1 at 6, 9

7

(Compl. ¶¶ 17, 29). To the extent that Stanazai raises a discrimination claim based on the schedule changes due to the "New Format," however, his claims are barred by res judicata.

It is well-established that "a final judgment on the merits bars further claims by parties or their privies based on the same cause of action." *Montana v. United States*, 440 U.S. 147, 153 (1979). Claim preclusion serves "to promote the finality of judicial determinations, to foster reliance on judicial decisions by minimizing the possibility of inconsistent decisions, to conserve judicial resources, and to spare adversaries the vexation and expense of redundant litigation." *Ramey v. Potomac Elec. Power Co.*, 580 F .Supp. 2d 48, 51 (D.D.C. 2008) (citing *Montana*, 440 U.S. at 153). Whether a new claim is barred as a matter of claim preclusion hinges on a four-part test. A lawsuit is barred if a prior case was litigated "(1) involving the same claims or cause of action, (2) between the same parties or their privies, and (3) there has been a final, valid judgment on the merits, (4) by a court of competent jurisdiction." *Smalls v. United States*, 471 F.3d 186, 192 (D.C. Cir. 2006) (citing *Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 323–24 (1971)). Here, the Court entered judgment in favor of the Board on Stanazai's age discrimination and retaliation claims based on various assignments that he received under the "New Format" in a prior litigation. *See Achagzai III*, 308 F. Supp. 3d at 399. Similarly, the Court dismissed Stanazai's previous hostile work environment claim, assuming that such a claim can be brought under the ADEA, on the ground that the "workplace discrimination" that he alleged was not so "severe" or "pervasive" that it "alter[ed] the conditions of [Stanazai's] employment." *Achgazai II*, 170 F. Supp. 3d at 183–84.

Accordingly, Stanazai's hostile work environment and discrimination claims arising from his treatment under the "New Format" are barred by res judicata.

2. *Administrative Exhaustion*

The ADEA's requirement for administrative exhaustion adds further clarity regarding the scope of the claims that Stanazai seeks to—and may—raise in the present action. *See Hamilton v. Geithner*, 666 F.3d 1344, 1349–50 (D.C. Cir. 2012). There are two tracks for exhausting administrative remedies under the ADEA: the employee can either "elect to follow [the] . . . procedures" that exist under Title VII, or he can "take an alternative path to federal court" by "bring[ing] [the] [age discrimination] claim directly to federal court . . . within 180 days of the allegedly discriminatory act" and "provid[ing] the EEOC with notice of . . . intent to sue at least 30 days before commencing suit." *Achagzai II*, 170 F. Supp. 3d at 172 (quoting *Rann v. Chao*, 346 F.3d 192, 195 (D.C. Cir. 2003)). Here, Stanazai alleges that he took the former approach and, prior to filing suit, "timely filed [an administrative claim] with [the Board's] Office of Civil Rights." Dkt. 1 at 2 (Compl. ¶ 3).

Under that approach, which tracks the Title VII process, the employee must initiate the administrative process by notifying an EEO counselor within 45 days of the alleged discriminatory act. *See* 29 C.F.R. § 1614.105(a)(1). If the counselor cannot resolve the issue through mediation, she must notify the employee of her right to file an administrative complaint, triggering a 15-day window to do so. *See id.* § 1614.105(d). Any allegations that are not timely raised in the administrative process cannot form the basis for a subsequent suit. *See Mount v. Johnson*, 36 F. Supp. 3d 74, 83 (D.D.C. 2014). Moreover, when an employee alleges that she was the victim of a discrete or discriminatory act, the timeliness inquiry focuses on that particular act. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110–111 (2002). "[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in [a] timely" manner in the administrative process. *Id.* at 113.

9

Because the ADEA's exhaustion requirement is not jurisdictional, *Menominee Indian Tribe of Wis. v. United States*, 614 F.3d 519, 527 (D.C. Cir. 2010), "the defendant bears the burden of pleading and proving" failure to exhaust as an affirmative defense, *Bowden v. United States*, 106 F.3d 433, 437 (D.C. Cir. 1997). Here, the Board properly raised that defense, *see* Dkt. 15-1 at 11–13, and submitted a statement of undisputed material facts ("SUMF"), Dkt. 15-2, supported by the EEO Counselor's report, Dkt. 15-6, Stanazai's formal complaint, Dkt. 15-7, and the Office of Civil Rights report on its investigation, Dkt. 15-8. It is undisputed that Stanazai initiated the EEO process on November 1, 2016. Dkt. 15-2 at 3 (SUMF ¶ 13). As such, he timely exhausted only those claims for "discrete retaliatory or discriminatory act[s]" that occurred within 45 days of November 1, 2016—that is, conduct that occurred on or after September 17, 2016—*see Morgan*, 536 U.S. at 110, and that he raised in the EEO process. The only incident identified in Stanazai's complaint and aired during the EEO process that falls within this actionable window is Ayazi's alleged failure to promote Stanazai to a management position as part of his October 7, 2016 reorganization. *See* Dkt. 1 at 16 (Compl. ¶ 15). Stanazai did not, for example, raise a hostile work environment claim in the EEO process, and his allegations relating to hiring decisions made between 2002 and 2015, *see* Dkt. 15-7 at 2, occurred long before the 45-day window for filing.[3] Accordingly, the Court will limit its analysis to claims that relate to the October 7, 2016 reorganizations.

---

3  In his brief in opposition, Stanazai alleged—for the first time—that he had applied for Ms. Lamih's managing editor position after she was initially promoted in October 2016, and was rejected. *See* Dkt. 17-1 at 6; Dkt. 17-5 at 3–4 (Stanazai Decl.). That claim, however, was neither alleged in his complaint nor exhausted in the EEO process.

The undisputed facts are as follows: In December 2016, it came to the Board's attention that "Ms. Lamih had obtained United States citizenship" but that she occupied a noncitizen GG-13 position. Dkt. 20-1 at 1–2 (Phillips Decl. ¶¶ 3–4). According to the Board, "[o]nce a noncitizen employee obtains citizenship, his or her noncitizen appointment ends." *Id.* at 2 (Phillips Decl.

3. *Non-selection Claims*

The Board contends that it is entitled to summary judgment on Stanazai's non-selection claims because he has failed to establish a prima facie case of discriminatory treatment or retaliation. *See* Dkt. 15-1 at 8–11. The Court agrees with respect to Stanazai's claim that he was not selected as a managing editor, but not with respect to his claim that he was not selected as a senior editor.

Under the *McDonnell-Douglas* framework, Stanazai bears the initial burden on his discriminatory treatment claim of demonstrating (1) that he belongs to a protected class; (2) "that he applied and was qualified for a job for which the employer was seeking applicants;" (3) "that, despite his qualifications, he was rejected;" and (4) "that, after his rejection, the position remained open and the employer continued to seek applicants from persons of [his] qualifications."[4] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). In the

---

¶ 3). To remedy this oversight, the Board established "a GS-13 position to replace Ms. Lamih's GG-13 position . . . and a vacancy announcement was posted." *Id.* (Phillips Decl. ¶ 4). It was to this position that Stanazai applied in December; he was rejected when the Board decided to retain Ms. Lamih. *See id.* (Phillips Decl. ¶¶ 4–5). Because Stanazai has failed to exhaust his administrative remedies with respect to this allegation that his non-selection was unlawful, and because his complaint includes no allegations regarding this distinct hiring decision, he cannot rely on the December events to avoid summary judgment on the claims that he has alleged.

[4] Once an employer has proffered a legitimate non-discriminatory reason for its action, however, "the district court need not—*and should not*—decide whether the plaintiff actually made out a prima facie case under *McDonnell Douglas*." *Brady v. Sergeant at Arms*, 520 F.3d 490, 494 (D.C. Cir. 2008) (emphasis in original). At that point, the only question for the Court is "whether the plaintiff produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the plaintiff on a prohibited basis." *Adeyemi v. District of Columbia*, 525 F.3d 1222, 1226 (D.C. Cir. 2008). Here, the two inquiries present two sides of the same coin. An element of Stanazai's prima facie case is whether, "despite his qualifications, he was rejected" from the managing editor and senior editor positions, and the Board's proffered nondiscriminatory reason is that Stanazai was unqualified because he was a GS-12 level employee.

11

retaliation context, Stanazai must show that he engaged in protected conduct; that his employer took an adverse personnel action; and that "a causal connection" existed between the two. *Mitchell v. Baldrige*, 759 F.2d 80, 86 (D.C. 1985) (quoting *Mckenna v. Weinberger*, 729 F.2d 783, 790 (D.C. Cir. 1983)). Critically, where, as here, a plaintiff alleges discrimination and retaliation based on failure to hire, his prima facie case fails if he cannot establish a vacancy in the position sought or that he met the minimum qualifications for that position. *See Morgan v. Fed. Home Loan Mortg. Corp.*, 328 F.3d 647, 653 (D.C. Cir. 2003); *see also Hayslett v. Perry*, 332 F. Supp. 2d 93, 100 (D.D.C. 2004).

Here, the Board has proffered unrebutted evidence that the October 2016 reassignments were part of a division-wide reshuffling of responsibilities in order to "reconfigure[] the three radio and television services into two services organized by language." *See* Dkt. 15-2 at 2 (SUMF ¶¶ 6–7). The reorganization did *not* create any vacant management positions. Rather, the reassignments were part and parcel of Mr. Ayazi's effort to "restructur[e] the management" to "streamline the workflow of the service." Dkt. 15-3 at 4 (Ayazi Email). That is why Ms. Lamih was reassigned to be the GS-13 managing editor of the new Pashto radio and television service and why Ms. Rozbih was assigned to be the GS-13 managing editor of the new Dari and Pashto television service. Dkt. 15-2 at 2 (SUMF ¶¶ 8–9). Given that Stanazai was a GS-12, he "could not have been reassigned to the [roles of managing editor]" because those are GS-13 positions." *Id.* at 3 (SUMF ¶ 10). Stanazai has failed to proffer any argument or evidence to the contrary. Instead, he merely asserts that "[he] must be afforded the right to bring forth the evidence in support of his claims." Dkt. 17-1 at 8. To the extent that Stanazai is arguing that he is entitled to take discovery before the Court rules on the Board's motion for summary judgment, he has failed to comply with Federal Rule of Civil Procedure 56(d). That rule requires the

nonmovant to "show[] by affidavit or declaration" the specific reasons why he is entitled to "take discovery." Fed. R. Civ. P. 56(d). Stanazai has filed no such affidavit or declaration.

There is one wrinkle, however. Stanazai not only alleges that the Board failed to promote him to managing editor, a GS-13 position, but his complaint also alleges that he "applied for *several* management positions that became available, but was denied, as reprisal for his EEO complaints." Dkt. 1 at 5 (Compl. ¶ 13) (emphasis added). In Mr. Ayaki's reorganization email, he assigned Ms. Lamih and Ms. Rozbih to managing editor positions *and* four other individuals to senior editor positions: "Ahmad Sear Zia and Hafiz Assefi to serv[e] as senior editors of the Dari team and Roshan Noorzai and Hasib Alikozai to serve as senior editors for the Pashto team." Dkt. 15-3 at 4–5 (Ayazi Email). The senior editors were to "support [Ms. Rozbih] and [Ms. Lamih] in leading the teams." *Id.* at 5 (Ayazi Email). The Court, accordingly, construes Stanazai's complaint as also raising a retaliation claim for being passed over for a senior editor position.[5] There is no indication, moreover, that these positions were limited to GS-13 employees. To the contrary, according to Stanazai, four GS-12 employees were reassigned "to senior editor positions[,] which provide[d] them opportunities for future promotions to GS-13." Dkt. 17-5 at 5 (Stanazai Decl.). Because the Board has failed to address this claim altogether, the Court cannot grant summary judgment as to this claim.

---

[5] This claim was also accepted, and hence, exhausted, during the EEO process. *See* Dkt. 15-8 at 3 (EEO Investigation Rpt.) ("Whether [Stanazai] was . . . overlooked for *all positions* that came available, to include, promoting an employee who lacked the necessary qualifications for one of the positions." (emphasis added)); *see also id.* at 4 (EEO Investigation Rpt.) ("[Stanazai] asserted that he was overlooked for positions in order to favor two-less qualified and younger females *and those from Pakistan*." (emphasis added)).

13

## CONCLUSION

For the foregoing reasons, the Court **DENIES** without prejudice the Board's motion for summary judgment, Dkt. 15, as to Stanazai's retaliation claim for non-selection as a senior editor and **GRANTS** the motion with respect to his remaining claims.

**SO ORDERED.**

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date: March 5, 2019