# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NASEEM STANAZAI,          ) | |
|          ) | |
|      *Plaintiff,*     ) | |
|          ) | |
|     v.       ) | Civil Action 17-2653 -RDM |
|          ) | |
| BROADCASTING BOARD OF   ) | |
| GOVERNORS,       ) | |
|          ) | |
|      *Defendant*.   ) | |

---

## PLAINTIFF NASEEM STANAZAI'S
## MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S
## FOR SUMMARY JUDGEMENT

Plaintiff Naseem Stanazai through undersigned counsel, hereby opposes Defendant's

Motion for Summary Judgement and Motion to Reconsider.  As set forth below and as detailed

in the accompanying Plaintiff's Statement of Material Facts in Dispute, submitted pursuant to

Rule 56(e), Fed.R.Civ.P. and Local Rule 7.1(h) and 56.1, Defendant's motion must be denied

because genuine issues of material fact exist, in support of Plaintiff's claim as to Retaliation.

## INTRODUCTION

Plaintiff Naseem Stanazai has brought several claims against Broadcasting Board of

Governors in his complaint based on systematic discrimination against senior (older) employees

in the service.  The claim that remains and at issue here is the claim of retaliation.

## FACTUAL BACKGROUND

Mr. Stanazai has been an International Broadcaster at VOA for the last 18 years.

He is an expert in the Pashto language. He holds a Bachelor of Arts from University of Kabul. Mr. Stanazai has carried out tasks that qualify him as a manager, however he has not been promoted and in fact deliberately overlooked for every management position for which he has applied since on or about 2010. As previously mentioned, Mr. Stanazai applied for the position of Managing Editor on or about 2010 and he was denied. The position went to someone who was far less qualified, Mr. Ibrahim Nasar (who was removed from the position in 2016). On or about 2013, Mr. Stanazai applied for the position of Chief of Afghan Service, the position went to Mr. Masood Farivar, who is far less qualified for the position compared to Stanazai.  Farivar was removed from this position in 2016. In 2014/2015  Stanazai was editing Shaiesta Sadat Lami's work, but she was promoted to the position of Managing Editor of TV and Radio, Pashto Service, even though Mr. Stanazai had applied for the same position. Mr. Stanazai is now working under the supervision of Ms. Lami. In 2015 Ms. Lina Rozbih was promoted to GS 13 as the Managing Editor of Ashna TV, in Dari and Pashto language, a position for which Mr. Stanazai is far more qualified, but he was not selected. In fact the Director of South East Asia Division,  Akbar Ayazi told Mr. Stanazai to help Ms. Rozbih do her job as a manager because of her lack of qualifications. Ms. Rozbih admitted that Mr. Stanazai is qualified for the position, but Mr. Stanazai was not given a chance and the position went to Ms. Rozbih. Mr. Stanazai applied for several management positions that became available, but was denied, as reprisal for his EEO complaints. Mr. Stanazai filed a federal complaint, 1:14-cv-00768-RDM, Achagzai et al v. Broadcasting Board of Governors, 2014. Mr. Stanazai was continuously discriminated against based on his national origin, age, and sex (male) and in reprisal for participating in protected EEO activity, when as of October 7, 2016, again he was treated less favorably thank similarly situated employees when he was overlooked for all positions that came available to include promoting an employee who lacked the necessary qualifications for the positions.

Management has implemented a change in policy called the New Format since 2010, which directly excludes senior staff and favors junior staff.  This policy has been the basis by which management has targeted, reduced and marginalized the work of senior staff, forcing them to retire or to force them into positions that are marginal and in retaliation for complaining, plaintiff was once again forced to production while all the best shows went to the younger staff.

Management has called this "new format" a form of "face lift."  Ms. Beth Mendelson who was the Chief of the Afghan Services and who was involved with setting up and creating the new format states that the new format was a "facelift" for the agency, getting rid of the old, she states this on page 31 of her deposition (excerpts are also attached, Exhibit 2).

A.  We were, those are the kinds of things we were considering. You know, we were trying to look at different things that we were going to be doing. I don't think we ultimately did that because we thought local news did that. But I was giving you an example. We were looking at everything. But I think we kept the basic format of, we kept the basic format of the radio and tightened it up. And I think we tried to make it a little bit more fast paced to energize the pacing of the -- you know, in television and radio a lot of it is about the pacing and the rhythm of shows. And the music, you know, changing music and giving it, for lack of a better word, a **facelift**.

Q Okay. And when you were energizing or –
A Facelifting?
Q Facelifting, you said the basic format was the same?
A In many ways, yeah, in many ways.
Page 31
Q Okay. And when you say the programming office wanted to revamp the Dari and Pashto Service, to, and part of that revamping was to, and I didn't understand, introduce new shows?
A New formats, new formats which would be new shows. A whole, a whole restructuring of the radio as it existed, which I don't believe they had

done in almost 20 years.
Page 17
Q So is it something nebulous that has to do
with –
A No.
Q So, okay.
A So the nexus of that was that the head of
programming, who at the time was John Lennon, had a
meeting with my then boss, Spozhmai Maiwandi, and
myself to talk about based on the, on the research
they had gotten they wanted to *really energize radio
in a different way*. They wanted to reformat. They
wanted to be, as they said, more competitive in the
marketplace. Television had started a couple years
prior. The Web was starting in Afghanistan. The
media landscape was changing from 2006, was changing
a great deal in Afghanistan, so they wanted radio to
change as well.

More recently, and of greater emphasis here, Mr. Akbar Ayazi (former Director of the

South and Central Asia Division), implemented a reorganization or management structure.  See

Carol Cobb's declaration where she explains what Mr. Ayazi's goal was at that time. Exhibit 1.

Both the "new format" and the "streamlined" management model had the same goal and the

same result, mainly to solidify the exclusion of senior staff, and by meticulous design to retaliate

against the senior staff who had complained of discriminatory conduct. Stanazai was one such

senior member of the staff.   In fact, Stanazai was never given more responsibility, or included,

or even acknowledged for his work, but was excluded, not reassigned to management, or allowed

to progress and to grow as an editor.

Further as of October 07, 2016, the senior staff was fully excluded by Mr. Ayazi, in his

unfolding of his version of the "new format" which he called management structure and/or

reorganization.  Exhibit 5.  He confidently reassigned to "management" positions.  His pretextual

reasoning for failing to include any senior staff who had complained was that they were not GS

13 and thus excluded.  However Ms. Shaista Lami was also  not qualified, as she was GG13 and

not a United States citizen.  However he overlooked such inconveniences until she was able to became a citizen.  It is not clear how long she was not a citizen in the position of a manger, where citizenship is required.  Please see Exhibit 3 where he explains that he assigned Ms. Lami to be GS13 managing editor of the Pashto radio.  When in fact, Stanazai was and continues to edit her work.  He was the editor for her when she was only on the news, as an on air talent. Because she was hired as a on air talent, or a person who appeals to TV audiences, she was qualified for GS13, not because of her language or management skills.

## LEGAL STANDARDS

### A.        Motion for Reconsideration

Federal Rule of Civil Procedure 54(b) governs a court's reconsideration of non-final, or interlocutory, orders.  *See Murphy v. Exec. Office for U.S. Attorneys, 11 F. Supp. 3d 7, 8 (D.D.C. 2014), aff'd, 789 F.3d 204 (D.C. Cir. 2015).*  An order granting a motion to dismiss, in part, is an interlocutory order.  *Cuban v. S.E.C., 795 F. Supp. 2d 43, 48 (D.D.C. 2011)* ("Court action that terminates fewer than all claims in a case is considered interlocutory." (citing *Langevine v. District of Columbia, 106 F.3d 1018, 1023 (D.C. Cir. 1997)*)).  Rule 54(b) provides that an interlocutory order "may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."  Fed. R. Civ. P. 54(b).  A motion for reconsideration under Rule 54(b) may be granted "as justice requires."  *United States v. Dynamic Visions, Inc., No. CV 11-cv-695(CKK), 2017 WL 1476102, at *2 (D.D.C. Apr. 24, 2017) (quoting Singh v. George Washington Univ., 383 F. Supp. 2d 99, 101 (D.D.C. 2005)).*  The court may consider whether it "patently misunderstood a party, made a decision beyond the adversarial issues presented to the court, made an error in failing to consider controlling decisions or data, or whether a controlling or

significant change in the law or facts has occurred since the submission of the issue to the Court." Id. (internal quotation marks and citation omitted).

**B.        Summary Judgment**

To prevail on a motion for summary judgment, one must show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." _Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Celotex Corp v. Catrett, 477 U.S. 317, 322 (1986)._ A factual dispute is material if it could alter the outcome of the suit under the substantive governing law, and a dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." _Anderson, 477 U.S. at 248._ "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the [record] which it believes demonstrate the absence of a genuine issue of material fact." _Celotex, 477 U.S. at 323._

Once the moving party has carried that burden, the opposing party must come forward with declarations or other evidence showing that there is a genuine issue of material dispute for the trier of fact. _See Grimes v. District of Columbia, 794 F. 3D 83, 94-95 (D.C. Cir. 2015)._ "A party asserting that a fact cannot be or is genuinely disputed must support the assertion" by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." _Fed. R. Civ. P. 56(c)(1)._

When a motion for summary judgment is adjudicated, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." _Anderson, 477 U.S. at 255._ The nonmoving party's opposition, however, must consist of more than mere unsupported

allegations or denials and must be supported by affidavits, declarations, or other competent evidence, setting forth specific facts showing that there is a genuine issue for trial. *See Fed. R. Civ. P. 56(e).* Summary judgment will not lie if the dispute about a material fact is "genuine," that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. At the summary judgment stage, the trial judge's function is not himself to weigh the evidence [*Anderson, 477 U.S. 242, 243*]   and determine the truth of the matter but to determine whether there is a genuine issue for trial.

## C.   ADEA Retaliation Claim

To qualify as an adverse action, the DC Circuit has explained that "[a]n employee must experience materially adverse consequences affecting the terms, conditions, or privileges of employment or future employment opportunities such that a reasonable trier of fact could find objectively tangible harm." *Douglas v. Donovan, 559 F.3d 549, 552 (D.C.Cir.2009); see also Taylor v. Small, 350 F.3d 1286, 1293 (D.C.Cir.2003)* (defining "adverse employment action" as "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits.").

In the context of retaliation claims, however, the definition of adverse action is arguably somewhat broader, such that "actions giving rise to claims are 'not limited to discriminatory actions that affect the terms and conditions of employment,' but reach any harm that 'well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.' " *Baird v. Gotbaum, 662 F.3d 1246, 1248–49 (D.C.Cir.2011) (quoting Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 64, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006)).* Despite this seemingly more relaxed standard, however, the Court of Appeals has been careful to forewarn that "[a]ctionable retaliation claims are [still] limited to those where an employer causes

'material adversity,' not 'trivial harms.'" *Wiley, 511 F.3d at 161 (quoting Burlington N., 548 U.S. at 68, 126 S.Ct. 2405).*

In *Sledge v. District of Columbia, 63 F.Supp.3d 1 (2014)* this court in outlining the framework for proving retaliation held that:

"To prove a prima facie case of retaliation, a plaintiff must show (1) that he engaged in a statutorily protected activity; (2) that he suffered a materially adverse action by his employer; and (3) that a causal link connects the two. *Hamilton v. Geithner, 666 F.3d 1344, 1357 (D.C.Cir.2012)* (citation omitted). Further, with respect to whether the employer's action is "materially adverse" for the purposes of a retaliation claim, courts consider whether the action "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006);*

The Court notably added:

"However, to establish the requisite causal nexus between the protected activity and the employer's materially adverse action, a plaintiff must demonstrate by direct or circumstantial evidence that the employer had actual knowledge of the protected activity and took adverse action against him because of it. *See Jones v. Bernanke, 557 F.3d 670, 678 (D.C.Cir.2009); see also Cones v. Shalala, 199 F.3d 512, 521 (D.C.Cir.2000); Lowe v. District of Columbia, 669 F.Supp.2d 18, 29–30 (D.D.C.2009)."*

Retaliation claims brought under Title VII are subject to the same burden–shifting framework at the summary judgment stage as single-motive discrimination claims. *See Jones, 557 F.3d at 678; see also Rattigan v. Holder, 982 F.Supp.2d 69, 82 (D.D.C.2013)* ("[A] Title VII retaliation claim cannot rely on a mixed motive theory."). As explained earlier, although the

McDonnell–Douglas framework applies, the D.C. Circuit has directed district courts to fast forward to the ultimate question of whether all of the evidence, taken together, supports an inference of retaliation when the employer has proffered a legitimate, non-discriminatory reason for the adverse action at issue. *See Jones, 557 F.3d at 678 (citing Wiley v. Glassman, 511 F.3d 151, 155–56 (D.C.Cir.2007)); see also Aka v. Wash. Hosp. Ctr., 156 F.3d 1284, 1294 (D.C.Cir.1998) (en banc)).* Accordingly, "the court reviews each of the three relevant categories of evidence—prima facie, pretext, and any other—to determine whether they 'either separately or in combination' provide sufficient evidence for a reasonable jury to infer retaliation." *Jones, 557 F.3d at 678 (citing Waterhouse v. District of Columbia, 298 F.3d 989, 996 (D.C.Cir.2002)*).

A plaintiff may support an inference that the employer's stated reasons were pretextual, and the real reasons were prohibited discrimination or retaliation, by citing the employer's better treatment of similarly situated employees outside the plaintiff's protected group, its inconsistent or dishonest explanations, its deviation from established procedures or criteria, or the employer's pattern of poor treatment of other employees in the same protected group as the plaintiff, or other relevant evidence that a jury could reasonably conclude evinces an illicit motive. *See Brady v. Office of the Sergeant at Arms, 520 F.3d @495, (D.C.Cir.2008).*

In *Rattigan v. Holder, 643 F.3d 975, 986 (D.C.Cir.2011)* this Court held that: "Whether a particular adverse action satisfied the materiality threshold is generally a jury question, with our role limited to determining whether, viewing the evidence in the light most favorable to the plaintiff, a reasonable jury could find the action materially adverse." *See also, Pardo-Kronemann v. Donovan, 601 F.3d 599, 607 (D.C.Cir.2010) (explaining, in the context of claim that reassignment of duties was materially adverse, that* "whether a particular reassignment of duties constitutes an adverse action is generally a jury question" (internal quotation marks and

alterations omitted)) *See also Czekalski v. Peters, 475 F.3d 360, 365 (D.C.Cir. 2007)* ("Whether a particular reassignment of duties constitutes an adverse action for purposes of Title VII is generally a jury question").

**ANALYSIS**

**1.      STANAZAI TIMELY EXHAUSTED HIS ADMINISTRATIVE REMEDIES.**

As this Court has previously ruled, Stanazai timely exhausted his administrative remedies regarding his discriminatory treatment or retaliation claim as to selection to any of the four senior editor positions. This Court further outlined the applicable legal framework in saying that under the ADEA, a federal employee may elect to exhaust administrative remedies in one of two ways.  First, the employee may "bring a claim directly to federal court . . . within 180 days of the allegedly discriminatory act," so long as the employee "provides the [Equal Employment Opportunity Commission ("EEOC")] with notice of his intent to sue at least 30 days before commencing suit." *Rann v. Chao, 346 F.3d 192, 195 (D.C. Cir. 2003).*

Second, the employee may timely exhaust administrative remedies following the same procedures applicable in Title VII cases.  To do so, the employee must alert an EEO counselor of any alleged discrimination within forty-five days of the relevant conduct.   *See 29 C.F.R. § 1614.105(a).* If the counselor cannot resolve the issue through mediation, he or she must notify the employee of his right to file an administrative complaint, triggering a fifteen-day window in which to do so.  Id.  Any claims brought in litigation must relate to allegations of discrimination that were timely raised in the administrative process.  *See Mount v. Johnson, 36 F. Supp. 3d 74, 83 (D.D.C. 2014).*  When the employee alleges that he was the victim of a "discrete retaliatory or discriminatory act," the timeliness inquiry focuses on that act.  *Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 110 (2002)*.  "[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in [a] timely" manner in the administrative

process. Stanazai has therefore satisfied the timeliness requirement. To the extent that any credence is accorded by this Court to the defendant's argument or not, that would negate this conclusion, such is ample evidence of the existence of a genuine issue of material fact in dispute that precludes summary judgment as a matter of law in the instant matter.

**2.        STANAZAI HAS PROVEN A MATERIALLY ADVERSE ACTION.**

**A.        Defendant has not met its burden under the second prong of McDonnell Douglas Framework.**

Under the McDonnell Douglas framework, an employee who proves his prima facie case is entitled to a presumption that the employer discriminatorily mistreated him. The presumption dissipates only if the employer meets its burden of production. Stanazai respectfully submits that the defendant has not met its burden because the defendant failed "to articulate a legitimate, nondiscriminatory reason for its action." *See Wheeler v. Georgetown Univ. Hosp., 812 F.3d 1109, 1113, at 1114 (D.C. Cir. 2016);* Failing to articulate such a reason properly "is the legal equivalent of . . . having produced no reason at all." *Patrick v. Ridge, 394 F.3d 311, 320 (5th Cir. 2004).* Further, Stanazai has produced enough evidence for a jury to find that the employer's asserted nondiscriminatory or nonretaliatory reason was not the actual reason and that the defendant intentionally discriminated or retaliated against him.

Stanazai alleges that he was discriminated and retaliated against when he was overlooked and not selected to the position of senior copy editor with a GS 13 pay scale despite his being qualified and there being vacancies for that position. To date Stanazai has been made to perform senior copy editor assignments without the requisite GS 13 pay scale that such a position command. Further, four other less qualified individuals were promoted from GS 12 pay scale to GS 13 as senior copy editors while overlooking and not selecting Stanazai. Notably, Stanazai's

retaliatory claims are founded upon the genuine material fact in dispute as to the true nature of what the defendant has erroneously classified as "reassignments" and "restructuring" non-competitive hiring. See Stanazai's Supplemental Affidavit detailing the discriminatory or retaliatory actions, their sequence of occurrence, and detrimental coercive and constructive impact.

The D.C. Circuit has warned district courts against focusing too much on the employee's burden to make out a prima facie case at the summary judgment stage. In *Brady v. Office of Sergeant at Arms,* the Circuit noted that the district court's "focus on the prima facie case [under McDonnell Douglas] was not atypical" because "district courts often wrestle with th[is] question" when deciding an employer's motion for summary judgment or judgment as a matter of law in Title VII cases. *520 F.3d at 493.* The D.C. Circuit stated that this "judicial inquiry into the prima facie case is usually misplaced" because "[i]n the years since McDonnell Douglas, the Supreme Court's decisions have clarified that the question whether the employee made out a prima facie case is almost always irrelevant." Id. "[O]nce the employer asserts a legitimate, non-discriminatory reason, the question whether the employee actually made out a prima facie case is 'no longer relevant' and thus 'disappear[s]' and 'drops out of the picture.'" Id. at 493-94 (quoting *St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 510, 511 (1993); Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143 (2000)). Relying on U.S. Postal Serv. Bd. of Governors v. Aikens, 460 U.S. 711, 715 (1983),* the D.C. Circuit has also instructed that "the prima facie case is a largely unnecessary sideshow" that has "spawn[ed] enormous confusion and wast[ed] litigant and judicial resources."

The rule governing this Court's analysis of the instant case was clearly articulated in Brady:

"In a Title VII disparate-treatment suit where an employee has suffered an adverse employment action and an employer has asserted a legitimate, non-discriminatory reason for the decision, the district court need not — and should not — decide whether the plaintiff actually made out a prima facie case under McDonnell Douglas.  Rather, in considering an employer's motion for summary judgment or judgment as a matter of law in those circumstances, the  district court must resolve one central question: Has the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the employee on the basis of race, color, religion, sex, or national origin? *See Hicks, 509 U.S. at 507-08, 511; Aikens, 460 U.S. at 71416. Brady, 520 F.3d at 493-94* (emphasis in original)."

A plaintiff can show discrimination through different means, including, but not limited to, evidence: that the employer treated other, similarly situated employees better; that the employer is lying about the underlying facts of its decision; that there were changes and inconsistencies in the employer's given reasons for the decision; that the employer failed to follow established procedures or criteria; or that the employer's general treatment of minority employees . . . was worse than its treatment of non-minorities . . . .  *Allen, 795 F.3d at 40*.  As previously stated, the defendant fails to make the requisite analysis to determine whether its evidential proffer is adequate. Stanazai contends that the absence of such analysis precludes summary judgment in favor of the defendant. To the extent the Court disagrees, Stanazai herein undertakes said analysis in the abundance of caution.

The DC Circuit recently outlined at least four factors that, in most cases, determine whether an employer's evidentiary proffer is adequate:

"the employer must produce evidence that a factfinder may consider at trial (or a summary judgment proceeding);" (2) if the factfinder believes the evidence, it "must reasonably be able to find that the employer's action was motivated by a nondiscriminatory reason;" (3) the "nondiscriminatory explanation must be ... facially credible in light of the proffered evidence;" and (4) the evidence must present a "clear and reasonably specific explanation" so that the employee has "a full and fair opportunity to attack the explanation as pretextual." _See Figueroa v. Pompeo, 923 F.3d 1078, 1087–88 (D.C. Cir. 2019)._

The Court's panel of Judges further recited the applicable standard pursuant to these factors as follows:

"[W]e hold that an employer at the second prong must proffer admissible evidence showing a legitimate, nondiscriminatory, clear, and reasonably specific explanation for its actions. The evidence must suffice to raise a triable issue of fact as to intentional discrimination and to provide the employee with a full and fair opportunity for rebuttal. When the reason involves subjective criteria, the evidence must provide fair notice as to how the employer applied the standards to the employee's own circumstances."

Stanazai submits that the use of the words "reassignment", "restructuring" and "reallocating" as it pertains to the four senior editor positions is pretextual and is intended to cover up the real reason behind the retaliation and discrimination against him. As to the First factor,  defendant has not proffered any admissible evidence on record in the instant matter that shows that Stanazai met the foregoing stated criteria namely that: even though they are proficient in their current positions, do not have the degree or range of skills the Agency ideally would want and which are available in the labor market."  To the contrary there is ample evidence on

record to proof the sufficiency of Stanazai's extensive skills and proficiency as a qualified and experience web and radio content editor

The defendant's reliance upon the purported declarations of Ayazi, Cobb and Philips are unavailing as inadmissible evidence. These purported declarations are fatally deficient pursuant to the applicable statutory requirements of _28 U.S.C.A. § 1746.,_ nor do they suffice as an affidavit for purposes of Summary Judgment under _Rule 56(e)_ of the Federal Rules of Civil Procedure which states as follows:

"Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith".

A valid affidavit is signed, attested before a notary public, and bears a notary's seal. _Jenkins v. Winter, 540 F.3d 742, 747 (8th Cir. 2008)._

An unsworn declaration may serve as an alternative to a formally attested affidavit if it is signed, dated, and states "under penalty of perjury" that the information within is "true and correct". _28 U.S.C. § 1746._ In _Smith v. Ergo Solutions LLC, 2019 WL 147718,_ this court recently restated the prevailing standard on the issue of unsworn declaration as follows:

"_Local Civil Rule 5.1(f) and 28 U.S.C. § 1746_ permit unsworn declarations to be used "with the same force and effect" of an affidavit so long as the declaration is signed and "subscribed as true under penalty of perjury, and dated, in substantially the following form: ... 'I declare ... under penalty of perjury ... that the foregoing is true and correct.'" Local Civil R 5.1(f) (emphasis added); _see 28 U.S.C. § 1746._

Additionally, were the evidence admissible, the factfinder, if it "believed" the evidence, could reasonably be able to find that "the employer's action was motivated by" a discriminatory reason because of the defendant's glaring failure to follow its own announced and stated procedures for competitive hirings. The evidence may also be accepted by a jury as showing "inconsistences" in defendant's articulated reasons. *Allen, 795 F.3d at 40.*

Defendant has equally failed to satisfy the third and fourth factors, because its articulation of a purported legitimate, nondiscriminatory reason or lack thereof "conceal[s] the target" at which Stanazai must aim his pretext arguments. The Figueroa Court as guidance observed that as:

"A central purpose of the second prong is to "focus the issues" and provide the worker "with 'a full and fair opportunity' to attack the" explanation as pretextual. *Lanphear v. Prokop, 703 F.2d 1311, 1316 (D.C. Cir. 1983) (quoting Burdine, 450 U.S. at 256).* Thus, as the fourth factor, the evidence must present a "clear and reasonably specific explanation." *Segar, 738 F.2d at 1269 n.13; accord Burdine, 450 U.S. at 258; Royall v. Nat'l Ass'n of Letter Carriers, AFLCIO, 548 F.3d 137, 144 (D.C. Cir. 2008)."*

Defendant  having failed to even present any analysis of the foregoing applicable factors cannot be said to have proffered "nondiscriminatory explanation must be ... facially credible in light of the proffered evidence;" and that the evidence it proffered by way of an analysis of said factors present a "clear and reasonably specific explanation" so that the employee has "a full and fair opportunity to attack the explanation as pretextual."  See Figueroa v. Pompeo, supra.

In so doing, the defendant has concealed the target at which Stanazai can aim at as "pretextual" As the Figueroa Court noted, a "plaintiff cannot be expected to disprove a defendant's reasons unless they have been articulated with some specificity." *See Loeb v. Textron, Inc., 600 F.2d 1003, 1014 (1st Cir. 1979).* Notably, the Ninth Circuit have clarified that

the articulated reason must be reasonably specific to the particular worker.  *See Diaz v. Eagle Produce Ltd. P'ship, 521 F.3d 1201, 1211 (9th Cir. 2008)* (finding insufficient an employer's explanation that the employee "was discharged as part of a general reduction in force" because such a general statement "does not explain why [the particular employee] was chosen to be part of" the discharged group).

A reasonable jury can so infer in the instant matter considering the foregoing.  Additionally, there is uncontroverted evidence on record that the defendant "failed to follow its own stated policy for competitive hiring process  In *Nurriddin v. Bolden, 40 F. Supp 3d 104, 132 (D.D.C), aff'd 818 F. 3d 751 (D.C. Cir. 2014),* the DC Circuit Court of Appeals held that: "failure to comply with an employer's attendance policy constitutes a nonretaliatory and nondiscriminatory ground for an adverse employment decision."

 Summary Judgment is therefore precluded in this matter.

## B.     There is evidence on record to show that Stanazai has proven a Material Adverse Action.

To allege an ADEA retaliation claim, a plaintiff must allege that "he . . . suffered (i) a materially adverse action (ii) because he . . . brought or threatened to bring a discrimination claim."  *Baloch, 550 F.3d at 1198. (Baloch v. Kempthorne, 550 F.3d 1191, 1191, 1201 (D.C. Cir. 2008)).*  In the context of a retaliation claim, however, the "materially adverse" standard "encompass[es] a broader sweep of actions than those in a pure discrimination claim."  Id. at 1198 n.4.  Rather than require that a plaintiff allege an action that materially alters the terms or conditions of employment, a plaintiff need allege only that the action "would have dissuaded a reasonable worker from making or supporting a charge of discrimination.'"  Id. *(quoting Burlington N., 548 U.S. at 68).*

This Court went on to say that in considering a similar allegation, the D.C. Circuit held that "[a] reasonable employee might well be dissuaded from filing an EEO complaint if she thought her employer would retaliate by burying her in work."  Citing _Mogenhan v. Napolitano, 613 F.3d 1162, 1164, 1166 (D.C. Cir. 2010)_ (observing that an employer had increased an employee's "workload to five to six times that of other employees"); _see also Mayers v. Laborers' Health & Safety Fund of N. Am., 478 F.3d 364, 369 (D.C. Cir. 2008)_ ("[I]ncreas[ing an employee's] workload and tighten[ing] her deadlines in retaliation for her seeking a reasonable accommodation . . . might suffice to defeat summary judgment on a retaliation claim."), abrogated on other grounds by _Green v. Brennan, 136 S. Ct. 1769 (2016)._  This Court, accordingly, concluded that Stanazai has alleged an adverse action enough to overcome the Board's motion to dismiss with respect to his retaliation claim under the ADEA.

Stanazai respectfully submits that this Court's conclusion still holds and further, that: "Whether a particular reassignment of duties constitutes an adverse action for purposes of Title VII is generally a jury question" that precludes summary judgment as a matter of law in the instant matter. _See Czekalski v. Peters, 475 F.3d 360, 365 (D.C.Cir. 2007)_.  The defendant's argument that Stanazai cannot prove a material adverse action in all its facets is unavailing as being premised on the wrong "standard". The appropriate "standard" is not "an action that materially alters the terms or condition of employment", rather Stanazai is required as the plaintiff to allege that the action of the defendant "would have dissuaded a reasonable worker from making or supporting a charge of discrimination."   In other words, "Title VII's substantive [discrimination] provision and its anti-retaliation provision are not coterminous" because the "scope of the anti-retaliation provision extends beyond workplace-related or employment-related retaliatory acts and harm." _Steele v. Schafer, 535 F.3d 689, 695 (quoting Burlington N., 548 U.S. at 67)._  Instead of only "affecting the terms, conditions, or privileges of employment," as must a

discriminatory adverse action, retaliatory conduct need only "dissuade [] a reasonable worker from making or supporting a charge of discrimination." *Mogenhan, 613 F.3d at 1166 (quoting Burlington N., 548 U.S. at 68).*

## C.   STANAZAI HAS PROVEN CAUSATION.

Stanazai respectfully submits that he has met this remaining prong as to the elements of Retaliation under Title VII. Stanazai respectfully contends that the defendant has not argued that he has not proven causation as instructed by this Court and that in so doing has conceded that argument. This Court may treat the unaddressed arguments as conceded. *Wannall v. Honeywell, Inc., supra*. To the extent that the defendant attempts to proffer legitimate reasons legitimate reasons for any of its actions, such constitutes the admission that Stanazai has proven that a prima facie case for Retaliation under Title VII lies in the instant matter.

Evidence of retaliation may be direct or circumstantial.  To establish a retaliation claim, a plaintiff must demonstrate that: (1) she was engaged in a protected activity; (2) the employer took a materially adverse employment action; and (3) there is a causal connection between the protected activity and the materially adverse action.  *Brown v. Paulson, 597 F. Supp. 2d 67, 73 (D.D.C. 2009) (citing Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006)).* Before a factfinder can infer causation, there must be evidence that the employer was aware of the protected activity.  *See Holcomb, 433 F.3d at 901-02.*

Importantly, retaliatory conduct need not reach the same level of adversity as discriminatory conduct. *See generally Mogenhan v. Napolitano, 613 F.3d 1162, 1165-66 (D.C. Cir. 2010).*  In other words, "Title VII's substantive [discrimination] provision and its anti-retaliation provision are not coterminous" because the "scope of the anti-retaliation provision extends beyond workplace-related or employment-related retaliatory acts and harm." *Steele v.*

_Schafer_, 535 F.3d 689, 695 (quoting Burlington N., 548 U.S. at 67). Instead of only "affecting the terms, conditions, or privileges of employment," as must a discriminatory adverse action, retaliatory conduct need only "dissuade [] a reasonable worker from making or supporting a charge of discrimination." _Mogenhan, 613 F.3d at 1166 (quoting Burlington N., 548 U.S. at 68)._

Nonetheless, this material adversity requires "more than 'those petty slights or minor annoyances that often take place at work and that all employees experience.'" _Bridgeforth v. Jewell, 721 F.3d 661, 663 (D.C. Cir. 2013) (quoting Burlington N., 548 U.S. at 68)._ Retaliation also differs from discrimination in its causation: retaliation claims must be proved according to traditional principles of but-for causation. This requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer. Univ. of _Tex. SW Med. Ctr. v. Nassar, 133 S. Ct. 2517, 2534 (2013)_ ("[A] plaintiff making a retaliation claim under § 2000e-3(a) must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer."). Title VII retaliation claims require proof that the desire to retaliate was the but-for cause of the challenged employment action. _See Gross v. FBL Financial Services, Inc., 557 U. S. 167 (2009)._

When a plaintiff offers only circumstantial evidence of retaliation, his claim is governed by the burden-shifting framework of _McDonnell Douglas Corp. v. Green, supra. Solomon v. Vilsack, 763 F.3d 1, 14 (D.C. Cir. 2014)._ Under that framework, a plaintiff must "first establish a prima facie case of retaliation by showing" that (i) he "engaged in statutorily protected activity," (ii) he "suffered a materially adverse action" by his employer, and (iii) a "causal link connects the two." Id. (_citing Jones v. Bernanke, 557 F.3d 670, 677 (D.C. Cir. 2009)_)). If a plaintiff establishes a prima facie case, the burden of production shifts to the employer to produce a legitimate, nonretaliatory reason for her action. Solomon, 763 F.3d at 14. And if the employer

does, the plaintiff must respond with evidence to create a genuine dispute on the ultimate issue of retaliation. See id.

Under the McDonnell Douglas framework, an employee who proves his prima facie case as Stanazai has, is entitled to a presumption that the employer discriminatorily mistreated him. The presumption dissipates only if the employer meets its burden of production. Stanazai respectfully submits that the defendant has not met its burden because the defendant failed "to articulate a legitimate, nondiscriminatory reason for its action." *See Wheeler v. Georgetown Univ. Hosp., 812 F.3d 1109, 1113, at 1114 (D.C. Cir. 2016);* Failing to articulate such a reason properly "is the legal equivalent of . . . having produced no reason at all." *Patrick v. Ridge, 394 F.3d 311, 320 (5th Cir. 2004).*

Further, as discussed above, Stanazai has produced enough evidence for a jury to find that the employer's asserted nondiscriminatory or nonretaliatory reason was not the actual reason and that the defendant intentionally discriminated or retaliated against him.

## D.     STANAZAI HAS PRODUCED ENOUGH EVIDENCE FOR A REASONABLE JURY TO FIND THAT HIS EMPLOYER'S PROFFERED JUSTIFICATION WAS PRETEXTUAL.

Stanazai has produced evidence by which a reasonable jury could conclude that the defendant's stated reason and or omission to state a reason was pretextual. "Usually, proffering 'evidence from which a jury could find that the employer's stated reasons were pretextual will get a plaintiff's claim to a jury." *See George v. Leavitt, 407 F. 3d 405, 413 (D.C. Cir. 2005).* Ultimately, even if the jury could conclude otherwise and credit the explanation proffered by the defendant, "at the summary judgment stage, a judge may not make credibility determinations,

weigh evidence, or draw inferences from the facts-these are jury functions, not those of a judge ruling on a motion for summary judgment." Id.

To the extent it might be conceivably said that the defendant has asserted legitimate, nonretaliatory reasons for each of the adverse action shown by Stanazai, pretext remains a genuine material fact in dispute under the circumstances in the instant matter. If a reasonable jury believes that Stanazai was denied his promised schedule change medical accommodation, it could also infer from the same evidence that the defendant retaliated against Stanazai. Therefore, based on the foregoing summary judgment is precluded in the instant matter.

**WHEREFORE**, the Plaintiff respectfully requests that the Court DENY Defendant's Motion for Summary Judgment.

Respectfully Submitted,

By:  /s/ Shameela Sarah Shah

SHAMEELA SARAH SHAH
Bar #995094
1310 L Street NW
Suite 750
Washington DC 20005
202-450-1059 / 202-450-1051
Email: s.sarah.shah@lawofficesofshahandshah.com

*Counsel for Plaintiff*