UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NASEEM S. STANAZAI,<br><br>   *Plaintiff*,<br><br> v.<br><br>BROADCASTING BOARD OF GOVERNORS,<br><br>   *Defendant*. | Civil Action No. 17-2653 (RDM) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Naseem Stanazai, an international broadcaster with the Pashto Language Service, is suing the Broadcasting Board of Governors ("the Board"), a federal agency that administers the Voice of America ("VOA"), for unlawful discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-2(a), and the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq*. The Board (now called the U.S. Agency for Global Media) previously moved for summary judgment, Dkt. 15, and the Court granted the Board's motion with respect to all of Plaintiff's claims except one: his claim that he was not offered a senior editor position in retaliation for his protected Equal Employment Opportunity ("EEO") activity, Dkt. 21. With respect to that claim, the Court observed that Plaintiff had exhausted his administrative remedies; that his Complaint could reasonably be construed to include the claim; and that the Board simply failed to address that one claim in its motion for summary judgment. *Id.* at 13–14.

After having taken discovery, the Board now moves for reconsideration of the Court's earlier decision, *id.*, or, in the alternative, for summary judgment. Dkt. 31. The Board's central

argument is that, during his deposition, Plaintiff "disavowed any claim of retaliation regarding the senior editor assignment." Dkt. 34 at 1; *see also* Dkt. 31-1 at 7. For the reasons that follow, the Court **DENIES** the Board's motion for reconsideration or, in the alternative, for summary judgment, Dkt. 31.

## I. BACKGROUND

Plaintiff Naseem Stanazai is an international broadcaster for VOA assigned to the Afghan Service ("Service") who, at the time of the events giving rise to the Complaint, was compensated at the GS-12 level. Dkt. 31-2 at 1 (Def.'s SUMF ¶ 2). In 2016, the Afghan Service came under new leadership, and the new acting Chief, Akbar Ayazi, proposed a restructuring. *Id.* at 1–2 (Def.'s SUMF ¶¶ 4–6). Until that time, the Afghan Service had four divisions: (1) Dari language radio; (2) Pashto language radio; (3) Dari and Pashto television; and (4) digital. *Id.* at 2 (Def.'s SUMF ¶ 5). Ayazi reorganized the radio and television divisions to be divided by language, rather than format. *Id.* (Def.'s SUMF ¶ 7). As a result of the restructuring, Ayazi reassigned Lina Rozbih and Shaista Sadat Lami to serve as the managing editors of the Dari radio and television service and the Pashto radio and television service, respectively. *Id.* (Def.'s SUMF ¶¶ 8–9). Each had previously been compensated at the GS-13 level and would continue to be compensated at that level. *Id.* Ayazi also asked two individuals to serve as "senior editors" for each newly organized team. *Id.* (Def.'s SUMF ¶ 10). Plaintiff's Complaint alleges that he had "applied for *several* management positions that became available, but was denied, as reprisal for his" prior protected EEO activity. Dkt. 1 at 5 (Compl. ¶ 13) (emphasis added).

The Board previously moved for summary judgment on the grounds that (1) "there was no managing-editor position that was vacant or for which [Plaintiff] was qualified" and (2) Plaintiff had failed to exhaust his administrative remedies. Dkt. 15-1 at 8. The Court agreed

2

and granted summary judgment on all of Plaintiff's claims, except for his claim that he had been passed over for one of the four senior editor positions in retaliation for his prior EEO activity. Dkt. 21 at 13.  Relying on the Plaintiff's allegation that he had "applied for several management positions," the Court understood Plaintiff to be alleging that both his non-selection for a managing editor position and his non-selection for a senior editor position were retaliatory.  *Id.* Because the Board's motion did not address the senior editor positions, that claim survived.  *Id.*

During discovery, Plaintiff was asked at his deposition to name all of the management positions which he was claiming that he had been unlawfully denied.  Dkt. 31-3 at 9:4–17:6; 21:10–26:14 (Stanazai Dep.).  Plaintiff listed a series of positions—web editor, managing editor, and Chief of the Afghan Service—but did not mention the senior editor position.  *Id.*  When pressed, Plaintiff reiterated that those positions were "all of the positions that [he was] claiming, in this case, that [he] w[as] improperly denied."  *Id.* at 17:3–6 (Stanazai Dep.).  In light of this testimony, the Board now moves for reconsideration of the Court's opinion on its prior motion for summary judgment or, in the alternative, for summary judgment.  Dkt. 31.

## II. ANALYSIS

There are two issues to resolve here: first, whether Plaintiff is pursuing a non-selection claim based on the senior editor position; and second, if so, whether the Board is entitled to summary judgment on that claim as a substantive matter.  The Court addresses each issue in turn.

1.   *Abandonment*

The Board first argues that Plaintiff is no longer pursuing the only claim that his Complaint adequately alleged: retaliation based on non-selection to the senior editor position. Dkt. 31-1 at 9 ("The Court should reconsider its prior decision denying the [Board's] summary judgment on a retaliation claim for nonselection as a senior editor because Stanazai asserts no

3

such claim in this case."). In support of this argument, the Board principally points to Plaintiff's deposition testimony, in which Plaintiff purportedly disavowed pursuing a senior-editor claim. In pertinent part, that testimony is recounted here:

> Q. Okay. I want to turn your [Plaintiff's] attention to paragraph number 13 [of the operative Complaint]. This is on page 5.[1]
>
> A. Okay.
>
> Q. That[] says that Mr. Stanazai applied for several management positions that became available, but was denied as reprisal for his EEO complaints. Did I read that correctly?
>
> A. Yeah.
>
> . . .
>
> Q. And now going to paragraph 9, you refer to a managing editor position that you say you applied for on or about 2010; correct?
>
> A. Yes.
>
> Q. Is that one of the management positions you're referring to in paragraph 13?
>
> A. Yes.
>
> Q. And [in] paragraph 10, you refer to a position as the chief of Afghan Service that you say you applied to or that you were not selected for in 2013; correct?
>
> A. That's right.
>
> Q. And is that one of the management positions you're referring to in paragraph 13?
>
> A. That's right.
>
> Q. Then in paragraph 11, you refer to a managing editor position that went to Ms. Lami[] in 2014/2015; correct?

---

[1] Paragraph 13 reads: "Mr. Stanazai applied for several management positions that became available, but was denied, as reprisal for his EEO complaints." Dkt. 1 at 5 (Compl. ¶ 13).

4

> A. That's right.
>
> Q. Is that one of the positions you're referring to in paragraph 13?
>
> A. That is one of the positions[.]
>
> . . .
>
> Q. Okay. And there's also a managing editor position referred to in paragraph 12; correct?
>
> A. That's right.
>
> Q. Is that also one of the management positions referred to in paragraph 13?
>
> A. Yeah.
>
> . . .
>
> Q. So going back. Other than the positions described in paragraphs 9 [managing editor position], 10 [chief of Afghan Service], 11 [managing editor position], and 12 [managing editor position] of your complaint in addition to the managing editor position in 2006, are there any other management positions that you're referring to in paragraph 13?
>
> A. Not that I remember right now, but those were the main positions.
>
> . . .
>
> Q. All right. I'm just trying to get a sense of your claims in the case.
>
> A. Okay.
>
> Q. And so those are the management positions that you claim you were improperly denied; is that correct?
>
> A. That's right.
>
> Q. And those are *all of the positions that you're claiming*, in this case, that you were improperly denied; is that correct?
>
> A. That's right.

Dkt. 31-3 at 9:4–17:6 (Stanazai Dep.) (emphasis added).

Shortly after this exchange, Plaintiff was handed a copy of an email sent by Ayazi to him and others on October 7, 2016.  *Id.* at 17:10–11, 19:22–25 (Stanazai Dep.); *see also* Dkt. 15-3 at 4 (Ayazi email).  The email, bearing the subject line "New Afghan service management structure," detailed a series of personnel changes that would become "effective immediately" at the Service.  Dkt. 15-3 at 4.  The changes affected the following positions: "acting service chief of the Afghan service;" managing editor of "the Dari team TV and radio;" managing editor of the Pashto team; special project coordinator of the Afghan Service; executive producers of the Afghan Service; web editor of the Dari website; and senior editors of the Dari and Pashto teams.  *Id.* at 4–5.  The Board's counsel allowed Plaintiff to review the document, after which the following exchange occurred:

> Q. Mr. Stanazai, you've had an opportunity to review Exhibit 2 in detail?
>
> A. Yes, sir.
>
> Q. And my question to you was other than the two managing editor positions that we just discussed, are there any other positions or responsibilities mentioned in this e-mail that you think should have gone to you?
>
> A. From the beginning when the web was started and launched in the Afghan Service, I was –
>
> Q. Well, first answer my question.
>
> A. That's the question – the answer.  I was helping the web, so – but I was not considered for it.  I was editor of web material, but I was not considered for that.
>
> . . .
>
> Q. And are you saying that you think you should have been the web editor of the Dari website?
>
> A. Or at least I should have been one of the editors[.]
>
> . . .

6

Q. So you're saying you felt like you should have been a web editor of a Pashto website?

A. (Witness shrugs.)

Q. You just shrugged?

A. Yeah. Basically, my complaint is – my claim is about the two managing editor positions, Dari and Pashto.

Q. Okay.

. . .

Q. So your claim in this case –

A. Yeah.

Q. Is about those two managing editor positions?

A. Yeah. But –

Q. And not any of the other –

THE REPORTER: I cannot write – you need to let him finish.

BY MR. WALKER:

Q. Your claim in this case is about the two managing editor positions?

A. Yeah.

Q. Not any of the other responsibilities in this e-mail?

A. No . . . .

Q. But I just want to be clear about what you're [sic] claims are in this case. So –

A. Okay. As far as the claim is going on, I claimed about Dari managing editor and Pashto managing editor.

Q. And those are the positions that went to Ms. [Rozbih] and Ms. [Lami]?

A. Yeah.

> Q.  And as far as this e-mail and this restructuring . . . . As far as the positions mentioned in e-mail are concerned, those two managing editor positions are *the only positions that are the subject of your claims in this case*?
>
> A.  That's right.

Dkt. 31-3 at 22:23–26:14 (Stanazai Dep.) (emphasis added).

The Board relies on these passages from Plaintiff's deposition to press the following point:  No reasonable jury could find that Plaintiff was unlawfully denied a position that he does not claim he was improperly denied.  The four senior editor positions, recall, are what remain of Plaintiff's retaliation claim.  Dkt. 21 at 13.  But when asked if "*all* of the positions that he [is] claiming . . . that [he was] improperly denied" were limited to positions of managing editor and Chief of the Afghan Service—neither of which are senior editor positions—Plaintiff responded, "[t]hat's right."  Dkt. 31-3 at 17:3–6 (Stanazai Dep.); *see also id.* at 26:14 (Stanazai Dep.).  Plaintiff's counsel did not seek to clarify any of these statements on redirect.  *Id.* at 62:4–75:18 (Stanazai Dep.).  And so, says the Board, it should prevail here:  After all, how could Plaintiff succeed on a claim that he admits he is not bringing?

The question is rhetorical.  But an attempt at answering it shows why the Board's reliance on Plaintiff's deposition, despite its surface appeal, must fail.  The Board's argument is essentially that Plaintiff abandoned his senior-editor claim during his deposition.[2]  *See* Dkt. 31-1 at 3 ("[T]he only claim the Court allowed to go forward is not in fact a claim at all . . . .").  But the doctrine of abandonment-by-deposition is not on such sure footing.

---

[2]  Beyond its recitation of the standard for reconsideration, the Board cites no legal authority in its opening brief's first argument section, which asserts that Plaintiff no longer "claim[s] that the [Board] retaliated against him by not assigning him as senior editor in 2016."  Dkt. 31-1 at 9.  Nor does the Board's reply brief cite any legal authority addressing the standard for abandonment of a claim.  Dkt. 34.  The Board simply reiterates that Plaintiff "asserts no claim whatsoever regarding the senior editor assignment."  *Id.* at 1.

To start, as Judge Walton has persuasively explained, "nothing in the Federal Rules of Civil Procedure specifically provides for the abandonment of an individual legal claim through deposition testimony." *Lemmons v. Georgetown Univ. Hosp.*, 241 F.R.D. 15, 29 (D.D.C. 2007). To the contrary, the Rules limit the mechanisms by which since-answered complaints may be modified: Rule 41, for example, "allows plaintiffs to voluntarily dismiss an action without permission of the Court 'by filing a stipulation of dismissal signed by all parties who have appeared in the action,'" *id.* at 30 (quoting Fed. R. Civ. P. 41(a)(1)), while Rule 15 allows "motions for leave to amend [that are] made in writing and . . . 'set forth with particularity the relief requested and the grounds supporting the request,'" *id.* (quoting 3 James Wm. Moore *et al.*, Moore's Federal Practice § 15.17 (4th ed. 2006)). Neither Rule is at play here.

It is true, as *Lemmons* observed, that "some courts do recognize the possibility that a claim might . . . be expressly and unilaterally abandoned during discovery if certain conditions are met." *Id.* at 30–31. That is because one purpose of discovery is to enable the parties "to disclose more precisely the basis of both claim and defense and to define more narrowly the disputed facts and issues." *Kingman Park Civic Ass'n v. Williams*, 348 F.3d 1033, 1040 (D.C. Cir. 2003); *see also Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) ("[D]iscovery itself is designed to help define and clarify the issues."). The D.C. Circuit, however, "has never recognized, nor even discussed, the propriety of this sort of" abonnement-by-discovery. *Lemmons*, 241 F.R.D. at 31. Given the long history of the use of depositions to explore the contours of a plaintiff's claims, that alone counsels caution.

So too do the decisions that have addressed the type of abandonment that the Board seeks. *Lemmons* again: in the "cases where abandonment has occurred, courts have almost uniformly founded such a determination on (1) an *explicit and unambiguous* statement by the

9

plaintiff that a particular claim was no longer being brought or (2) factual assertions made in discovery, usually during deposition testimony, that contradict or otherwise fatally undermine the factual predicate for one or more of the plaintiff's legal claims as articulated in the complaint." *Id.* Thus in *Versarge*, for example, a plaintiff abandoned a claim for monetary damages when the plaintiff's *counsel* stated during the plaintiff's deposition that "[w]e've abandoned that claim." *Versarge v. Township of Clinton, N.J.*, 984 F.2d 1359, 1363 & n.1 (3d Cir. 1993). This is not such a case.

Plaintiff's briefing, declaration, deposition testimony, counterstatement of material facts, and interrogatory response, each suggest, in some way, that Plaintiff's senior-editor claim remains alive. To be sure, Plaintiff's Complaint is not the picture of clarity, merely averring that he "applied for several management positions that became available, but was denied, as reprisal for his EEO complaints." Dkt. 1 at 5 (Compl. ¶ 13). But, as the Court previously noted, use of the word "several" suggests that the Complaint takes aim at more than the two managing editor positions. Dkt. 21 at 13; *see also Several*, *Merriam-Webster.com*, https://www.merriam-webster.com/dictionary/several (last visited Oct. 14, 2020) (defining "several" to mean "more than two but fewer than many"). Plaintiff, moreover, was explicit about this in his brief in opposition to the Board's prior motion for summary judgment: "Mr. Stanazai was continuously discriminated against based on his national origin, age, and sex (male) and in reprisal for participating in protected EEO activity, when as of October 7, 2016, again he was treated less favorably than[] similarly situated employees when he was overlooked for *all* positions that came available . . . ." Dkt. 17-1 at 3 (emphasis added). The senior editor positions were among the positions that were available as of October 7, 2016. Dkt. 15-3 at 4–5. Plaintiff's accompanying declaration was even clearer: "I believe Mr. Ayazi followed his discriminatory

10

and retaliatory policy against me [when] he promoted junior staff to senior editor such as Hasib Alikoza[i] and Hafiz Assefi," and "Mr. Ayazi according to his own email . . . did reassign four individuals of GS12 to *senior editor* positions which provide[d] them [with] opportunities for future promotion to GS13."  Dkt. 17-5 at 4–5 (First Stanazai Decl.) (emphasis added); *see also* Dkt. 15-3 at 4–5 ("I have asked Ahmad Sear Zia and Hafiz Assefi to serv[e] as senior editors of the Dari team and Roshan Noorzai and Hasib Alikozai to serve as senior editors for the Pashto team.").

Plaintiff's response to the Board's pending motion for summary judgment is to the same effect.  His brief, once again, asserts that he "applied for *several* management positions that became available, but was denied, as reprisal for his EEO complaints" and that, "as of October 7, 2016 . . . he was treated less favorably than[] similarly situated employees when he was overlooked for *all* positions that came available."  Dkt. 33-1 at 2 (emphasis added).  Beyond that, his brief asserts that "four other less qualified individuals were promoted from GS 12 pay scale to GS 13 as senior copy editors while overlooking and not selecting [Plaintiff]."  *Id.* at 11.  And, albeit without citing any record evidence, Plaintiff disputed the Board's assertions that he (1) "did not apply to be a senior editor as part of the reassignments," (2) "does not have reason to believe that he was improperly denied the position of senior editor as part of the October 2016 reassignments," and (3) "claims only that he was retaliated against in being denied the managing editor assignments that went to Ms. Rozbih and Ms. Lami."  *Compare* Dkt. 31-2 at 3 (Def.'s SUMF ¶¶ 11–13) *with* Dkt. 33-2 at 1–2 (Pl.'s Resp. to Def.'s SUMF ¶ 2).  Plaintiff backs up these denials with his second declaration, which attests that he has "always sought a *senior editor* assignment/position" but was "not . . . given the opportunity because" his "employer retaliated against" him for "complain[ing]."  Dkt. 33-5 at 1 (Second Stanazai Decl.) (emphasis added).

11

Plaintiff further attests that he "applied for positions every time they came up" and that "Mr. Ayazi actually never even bothered to advertise or tell us about the restructuring which is the same as new positions." *Id.* at 2; *see also* Dkt. 15-3 at 2 (Ayazi Decl. ¶ 9) (acknowledging that the October 2016 senior editor positions were "not advertise[d]" and were not filled via "a competitive hiring process"). Plaintiff's deposition testimony also reveals that he applied for a senior copy editor position in late 2015 or early 2016 and that Ayazi "later on" assigned "people like Roshan and Hasi[b] and As[se]fi in there" and eventually promoted them to "GS-13 through . . . benchmarking," while "eliminat[ing]" Plaintiff from consideration in retaliation for his protected EEO activity. Dkt. 31-3 at 32:19–35:10 (Stanazai Dep.).

Finally, Plaintiff's response to the Board's interrogatory asking Plaintiff to "[i]dentify each and every position that [he] contend[s] that [he was] passed over" for does not support the Board's theory of abandonment. Dkt. 31-4 at 7 (Pl.'s Resp. to Def.'s Interrogatories). Although once again not a picture of clarity, Plaintiff responded the he "applied for several management positions that became available, but was denied as reprisal for his EEO complaints"—the same phrase, word-for-word, that appears in Plaintiff's Complaint and that the Court has already construed reasonably to encompass the senior editor position. *Id.*; *see also* Dkt. 21 at 13–14. On balance, then, the record is shorn of the "explicit and unambiguous evidence" needed to sustain an argument of abandonment. *Lemmons*, 241 F.R.D. at 31 (emphasis omitted).[3]

---

[3] Two words of caution are in order. First, the Court construes the parties' statements of material "facts" regarding Plaintiff's pursuit of the senior-editor claim as raising *legal* not *factual* assertions. Were it otherwise, Plaintiff's counterstatement of "dispute[]"—unsupported by any record citations—might fail to satisfy the dictates of Rule 56(c)(1), *see* Fed. R. Civ. P. 56(c)(1) ("A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence . . . of a genuine dispute . . . ."), and Local Rule 7(h)(1), *see* Loc. Civ. R. 7(h)(1) ("An opposition to [a motion for summary judgment] shall be accompanied by a separate concise statement of genuine issues setting forth all material facts as to which it is contended

The Court recognizes that it might be possible to read Plaintiff's concessions at his deposition as raising not a legal question, but a factual one—whether, as a matter of fact, Plaintiff was improperly denied the position of senior editor. But that reading is hardly compelled. Accordingly, a reasonable jury could conclude that Plaintiff's statements related to the legal nature of his claim, and the question of *legal* abandonment is for the Court, not the jury. The Court must, accordingly, reject the Board's contention that Plaintiff's deposition testimony requires the entry of summary judgment. Were the questions at deposition posed in unmistakably factual terms—for example, "did you ever express an interest in assignment to a senior editor position" or "why do you believe that you were denied a senior editor position because of your protected EEO activity"—the Board would stand on firmer ground. But as framed, and particularly given the Board's counsel's reliance on the Complaint to guide the deposition, Plaintiff could have (and likely did) understand the questions to inquire about what legal claims he was asserting in the Complaint, and, for the reasons explained above, a legal

---

there exists a genuine issue necessary to be litigated, which shall include references to the parts of the record relied on to support the statement."), notwithstanding the testimony and declarations discussed above. Second, to the extent Plaintiff relies on his second declaration to contradict any statement made in his deposition, Plaintiff is reminded that "[c]ourts have long held that a party may not create a material issue of fact simply by contradicting its prior sworn testimony." *Pyramid Sec. Ltd. v. IB Resolution, Inc.*, 924 F.2d 1114, 1123 (D.C. Cir. 1991). This rule, to be sure, applies only if the contradiction is "clear;" a later attempt to "'clarify confusing or ambiguous [prior] testimony'" does not implicate the rule. *Johnson v. Shinseki*, 811 F. Supp. 2d 336, 344 (D.D.C. 2011) (quoting *St. Paul Mercury Ins. Co. v. Capitol Sprinkler Inspection, Inc.*, 573 F. Supp. 2d 152, 160 (D.D.C. 2008) (subsequent history omitted)). But when the conflict is clear, unless a "party can offer persuasive reasons for believing the" new testimony—for example, that the new testimony "is more accurate than the prior testimony," *Shinseki*, 811 F. Supp. 2d at 341, or that "new evidence" has come to light, *St. Paul Mercury*, 573 F. Supp. 2d at 161—the prior testimony controls, *Shinseki*, 811 F. Supp. 2d at 341. A plaintiff, in short, "cannot receive Defendant's motion for summary judgment and then go in search of new evidence with which to attack Defendant's arguments. This contradicts the very notion of a discovery process." *Galvin v. Eli Lilly & Co.*, 488 F.3d 1026, 1029 (D.C. Cir. 2007).

claim is not so easily abandoned, particularly where there is good reason to believe that the witness has not made an informed decision, in consultation with counsel, to abandon the claim.

    2.    *Prima Facie Case*

The Court must also consider whether the Board is entitled to summary judgment as a substantive matter. Without deciding whether the Board would be able to make the requisite showing on the existing factual record, the Court concludes that the Board's cursory discussion of the question does not suffice to dispose of Plaintiff's claim.

To succeed on a retaliation claim based on non-selection, a plaintiff "must show that he engaged in protected conduct; that his employer took an adverse personnel action; and that a causal connection existed between the two." Dkt. 21 at 12 (quotation marks omitted). Moreover, "[w]here, as here, the plaintiff claims that the retaliation took the form of a failure to hire [or promote], the plaintiff must also show . . . that he applied for an available job; and . . . that he was qualified for that position." *Morgan v. Fed. Home Loan Mortg. Corp.*, 328 F.3d 647, 651 (D.C. Cir. 2003). If the plaintiff succeeds in making this prima facie showing, the burden then shifts to the employer to provide a "legitimate, nondiscriminatory or non-retaliatory reason for the challenged action." *Morris v. McCarthy*, 825 F.3d 658, 668 (D.C. Cir. 2016). "Once the employer proffers a non-retaliatory reason for the challenged employment action, the burden-shifting framework falls away, and the 'central question' becomes whether 'the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted nondiscriminatory [or non-retaliatory] reason was not the actual reason and that the employer intentionally discriminated [or retaliated] against the employee.'" *Allen v. Johnson*, 795 F.3d 34, 39 (D.C. Cir. 2015) (quoting *Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 494 (D.C. Cir. 2008)).

Here, the Board does not contest that Plaintiff "engaged in protected conduct," Dkt. 21 at 12, or that he was "qualified for th[e] position" of senior editor, *Morgan*, 328 F.3d at 651. Nor does the Board's motion dispute that Plaintiff suffered "an adverse personnel action." Dkt. 21 at 12. What remains of the prima facie case, then, is (1) whether "a causal connection existed between" Plaintiff's non-selection and his protected activity, *id.* (quotation marks omitted), and (2) whether Plaintiff "applied for an available job," *Morgan*, 328 F.3d at 651. The Board contends that Plaintiff's retaliation claim faulters on both prongs. It fails to offer a convincing account, however, on either.

First, the Board challenges causation, but merely asserts: "because Stanazai does not claim that he was not assigned to the senior editor positions for retaliatory reasons . . . he cannot make out a prima facie case of retaliation." Dkt. 31-1 at 10. There may be some reason to doubt whether Plaintiff can establish the required causal connection, but the single sentence offered by the Board is not it. As explained above, the Court concludes that Plaintiff has alleged—and maintains—that Ayazi failed to offer him one of the senior editor positions in retaliation for his protected EEO activity. Of particular relevance here, both of Plaintiff's declarations affirm his belief that Ayazi declined to promote him to a "senior editor" position in retaliation for his EEO activity. Dkt. 17-5 at 4 (First Stanazai Decl.); Dkt. 33-5 at 1 (Second Stanazai Decl.). Although it is unclear whether Plaintiff has a factual basis for that belief sufficient to defeat summary judgment, that is not the argument that the Board has made.

Second, the Board—in two sentences—contends that Plaintiff never sought "to be placed in the senior editor positions." Dkt. 31-1 at 10. Again, the Board's argument fails. Plaintiff attests that he "always sought a senior editor assignment/position," Dkt. 33-5 at 1 (Second Stanazai Decl.); was "always seeking management position[s]," *id.* at 3; and could not apply for

15

the October 2016 senior editor positions because they were never advertised, *id.* at 2, a point which the Board admits, *see* Dkt. 15-3 at 2 (Ayazi Decl. ¶ 9) (October 2016 senior editor positions were "not advertise[d]" and were not filled via "a competitive hiring process"). In addition, Plaintiff testified during his deposition that he had made clear—before October 7, 2016—that he was interested in a senior editor position. *See* Dkt. 31-3 at 32:19–35:4 (Stanazai Dep.). When weighed against the minimal evidence offered by the Board, these assertions—made under the penalty of perjury—are sufficient to create a triable issue of fact about whether Plaintiff meaningfully expressed his interest in the senior editor positions, and, indeed, did all that he could because the positions were never advertised.

The Court, accordingly, is unpersuaded by either of the two arguments that the Board makes on the merits. The Court recognizes that Plaintiff has done little to show that he is entitled to prevail. But, at this stage of the proceedings, the burden is the Board's, and the slender arguments that it makes—amounting to three sentences of analysis—do not justify the entry of summary judgment in its favor.

## CONCLUSION

For the foregoing reasons, the Court **DENIES** the Board's motion for reconsideration or, in the alternative, for summary judgment, Dkt. 31. The parties shall appear for a telephonic status conference on October 29, 2020 at 2:00 p.m. to discuss further proceedings.

**SO ORDERED.**

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date: October 16, 2020