UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NASEEM S. STANAZAI,<br><br>*Plaintiff,*<br><br>v.<br><br>BROADCASTING BOARD OF GOVERNORS,<br><br>*Defendant.* | Civil Action No. 17-2653 (RDM) |

**MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

CHANNING D. PHILLIPS
*Acting United States Attorney*

BRIAN P. HUDAK
*Acting Chief, Civil Division*

JOHNNY H. WALKER
*Assistant United States Attorney*

United States Attorney's Office
555 4th Street, N.W.
Washington, District of Columbia 20530
Telephone: 202 252 2575
johnny.walker@usdoj.gov

April 21, 2021                     *Counsel for Defendant*

## <u>CONTENTS</u>

INTRODUCTION ........................................................................................................... 1

BACKGROUND ........................................................................................................... 1

      A.     Factual Background ................................................................................. 1

      B.     Procedural Background............................................................................ 3

STANDARD ................................................................................................................. 5

ARGUMENT ................................................................................................................ 6

    I.      Stanazai cannot make out a prima facie case of retaliation regarding the
         "senior editor" assignments. ................................................................... 6

    II.     The agency had legitimate, nonretaliatory reasons for not naming Stanazai a
         "senior editor."................................................................................... 10

CONCLUSION............................................................................................................ 13

# AUTHORITIES

*Page(s)*

**Cases**

*Achagzai v. Broad Bd. of Governors*,
    308 F. Supp. 3d 396 (D.D.C. 2018) ...................................................... 4

*Achagzai v. Broad. Bd. of Governors*,
    170 F. Supp. 3d 164 (D.D.C. 2016) ...................................................... 3

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ............................................................................. 5, 6

*Brady v. Off. of Sergeant at Arms*,
    520 F.3d 490 (D.C. Cir. 2008) ............................................................. 11

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) ............................................................................. 5, 6

*Figueroa v. Pompeo*,
    923 F.3d 1078 (D.C. Cir. 2019) ........................................................... 10

*Hall v. Giant Food, Inc.*,
    175 F.3d 1074 (D.C. Cir. 1999) ........................................................... 7

*Hampton v. Vilsack*,
    685 F.3d 1096 (D.C. Cir. 2012) ........................................................... 11

*Hayslett v. Perry*,
    332 F. Supp. 2d 93 (D.D.C. 2004) ....................................................... 8

*Holcomb v. Powell*,
    433 F.3d 889 (D.C. Cir. 2006) ............................................................. 6

*Int'l Bhd. of Teamsters v. United States*,
    431 U.S. 324 (1977) ............................................................................. 7

*Laningham v. U.S. Navy*,
    813 F.2d 1236 (D.C. Cir. 1987) ........................................................... 6

*McDonnell Douglas Corp. v. Green*,
    411 U.S. 792 (1973) ............................................................................. 7

*Mitchell v. Baldrige*,
    759 F.2d 80 (D.C. Cir. 1985) ............................................................... 7

*Moore v. Hagel*,
    No. 10-0632, 2013 WL 2289940 (D.D.C. May 24, 2013) ................... 8

*Morgan v. Fed. Home Loan Mortg. Corp.*,
    328 F.3d 647 (D.C. Cir. 2003) ............................................................. 8

*Reeves v. Sanderson Plumbing Prods., Inc.*,

530 U.S. 133 (2000) ................................................................................................................... 7

*Stanazai v. Broad. Bd. of Governors*,
No. 17-2653, 2019 WL 1046296 (D.D.C. Mar. 5, 2019) ............................................. 4, 5, 9

*Stoyanov v. Winter*,
643 F. Supp. 2d 4 (D.D.C. 2009) ........................................................................................... 8

*Texas Dep't of Cmty. Affairs v. Burdine*,
450 U.S. 248–54 (1981) ...................................................................................................... 7-8

*Walker v. Johnson*,
798 F.3d 1085 (D.C. Cir. 2015) ..................................................................................... 11, 12

*Yarber-Butler v. Billington*,
53 F. App'x 120 (D.C. Cir. Dec. 13, 2002) ......................................................................... 8

**Statutes**

22 U.S.C. § 1474 ....................................................................................................................... 2

29 U.S.C. § 623 ...................................................................................................................... 6-7

42 U.S.C. § 2000e-2 ................................................................................................................. 6

42 U.S.C. § 2000e-3 ................................................................................................................. 6

## INTRODUCTION

As construed by the Court, Plaintiff Naseem Stanazai's complaint alleges that the Broadcasting Board of Governors ("BBG") retaliated against him on account of his prior protected activity when it did not select him to be a "senior editor" during an October 2016 restructuring of the Voice of America's Afghan Service. Any such claim fails, however, because there was no open positions and no selection process associated with the senior editor roles. The individuals described in an email as assuming the role of "senior editor" following the restructuring held the same positions and performed the same duties as they had prior to the restructuring. For this same reason, the BBG had a nonretaliatory basis for not selecting Stanazai as a "senior editor." Stanazai cannot meet his burden to show that the real reason for his nonselection is retaliation and, in fact, has failed to articulate such a belief in discovery when asked. For these reasons, the BBG should be granted summary judgment.

## BACKGROUND

A.     Factual Background

The BBG (now called United States Agency for Global Media) is an independent federal agency that oversees all nonmilitary international broadcasting funded by the United States. SOF ¶ 1. One of its networks is Voice of America, an international broadcasting service providing news and information in forty-five languages to a weekly audience of 236.8 million people around the world. SOF ¶ 2. At all relevant times, Stanazai was a GS-12 International Broadcaster with Voice of America serving the Afghan Service in the South and Central Asia Division. SOF ¶ 3. The Afghan Service broadcasts radio and television content and publishes digital content in the Dari and Pashto languages. SOF ¶ 4.

From April 5, 2015, until his recent death in August 2019, Akbar Ayazi was the Director of the South and Central Asia Division. SOF ¶ 5. For approximately six months in 2016, Ayazi also

served as the acting Chief of the Afghan Service. SOF ¶ 5. At the time that Ayazi became acting Chief, the Afghan Service was divided into four groups: (1) Dari radio, (2) Pashto radio, (3) Dari and Pashto television, and (4) digital. SOF ¶ 6. Each of the four groups was led by a GS-13 employee referred to as either a "managing editor" or a "supervisory international broadcaster." SOF ¶ 6.

Shortly after becoming acting Chief of the Afghan Service, Ayazi proposed to reassign management responsibilities in the service to streamline workflow and improve the quality of the broadcast. SOF ¶ 7. In particular, he reconfigured the three radio and television groups into two groups organized by language. Thus, Dari radio, Pashto radio, and Dari and Pashto television became Dari radio and television and Pashto radio and television. SOF ¶ 8. Ayazi reassigned certain GS-13 employees in the Afghan Service to fit this new arrangement. He reassigned Lina Rozbih—who had previously been the GS-13 managing editor of the Dari and Pashto television service—to be the GS-13 managing editor of the Dari radio and television service. SOF ¶ 9. Ayazi also reassigned Shaista Sadat Lami to be the GG-13 managing editor of the Pastho radio and television service. SOF ¶ 10. Lami had previously been a GG-13 international broadcaster for Pashto television. SOF ¶ 10.

Ayazi also asked broadcasters Ahmad Sear Zia and Hafiz Assefi to serve as "senior editors" of the Dari team and for Roshan Noorzai and Hasib Alikozai to serve as "senior editors" of the Pashto team. SOF ¶ 11. Prior to the restructuring, these four individuals had served as "team leaders" for their respective teams within the Afghan Service. SOF ¶ 14. As team leaders, they were responsible for duties such as assisting with the assignment of tasks, finding news stories for broadcast, and copy editing. SOF ¶ 14. Following the restructuring, the four individuals continued to perform these same duties for the new teams organized by language rather than broadcast

medium. SOF ¶ 14. They did not receive grade increases or any other form of promotion as a result of the restructuring. SOF ¶ 13.

B.    Procedural Background

Stanazai initiated contact with an Equal Employment Opportunity ("EEO") counselor on November 1, 2016, and filed a formal complaint of discrimination with the BBG's Office of Civil Rights on February 14, 2017. ECF No. 15-6 at 6; ECF No. 15-7 at 1. Stanazai's formal complaint claimed that he was "not considered for any of the positions" in the October 2016 restructuring (but specifically mentioned only the GS-13 managing editor positions in Dari radio and television and Pashto radio and television) due to discrimination against his age, national origin (Afghan), and in reprisal for his prior protected activity. ECF No. 15-7 at 2–3. On December 11, 2017, without having received a final decision by the BBG, Stanazai filed this case. Compl., ECF No. 1.

As the Court is aware, this is not Stanazai's first lawsuit against the BBG. In 2014, he joined four other plaintiffs to sue the BBG for alleged discrimination and retaliation. *See Achagzai v. Broad. Bd. of Governors*, No. 14-0768 (D.D.C. filed May 5, 2014). This Court dismissed all of the plaintiffs in that case except Stanazai for failure to exhaust. *Achagzai v. Broad. Bd. of Governors*, 170 F. Supp. 3d 164, 174–79 (D.D.C. 2016). The Court dismissed several of Stanazai's claims for failure to exhaust as well because "the majority of the alleged events described in [his formal complaint of discrimination] occurred well before . . . the 45-day cutoff." *Id.* at 179–80. The Court did, however, allow two of Stanazai's exhausted claims to proceed to discovery: one alleging that his supervisor sent him an angry email after Stanazai failed to timely complete an assignment, and another alleging that his supervisor changed his work schedule in a way that allegedly promoted inferior staff to supervisory roles. *Id.* at 180.

3

The BBG eventually sought and was granted summary judgment on those claims. The Court held that the angry email was not a cognizable adverse action because, "although given ample opportunity to take discovery, Stanazai has failed to identify any evidence that would permit a reasonable jury to find that the email 'result[ed] in a tangible consequence, such as a demotion, loss of a bonus, or missed opportunity for advancement.' *Achagzai v. Broad Bd. of Governors*, 308 F. Supp. 3d 396, 405 (D.D.C. 2018) (quoting *Achagzai*, 170 F. Supp. 3d at 181) (emphasis in original). As to Stanazai's claim about the schedule, the Court held that the disputed schedule did not in fact reduce his responsibilities and did not prevent him from obtaining a promotion to managing editor in December 2016. *Id.* at 406–11.

Meanwhile, in this case, the BBG responded to Stanazai's complaint by moving for summary judgment, arguing that Stanzai could not make out a prima facie case of discrimination or retaliation in connection with his nonselection for a managing editor position in the October 2016 reconfiguration of the Afghan Service because the BBG did not create any new positions as part of that reconfiguration and Stanazai, as a GS-12, was not eligible to be placed in a GS-13 position, and that Stanazai had failed to exhaust any of the other alleged adverse actions mentioned in his complaint. *See* ECF No. 15-1. The Court largely granted the BBG's motion. *See Stanazai v. Broad. Bd. of Governors*, No. 17-2653, 2019 WL 1046296 (D.D.C. Mar. 5, 2019). The Court concluded that (1) Stanazai's hostile work environment and discrimination claims based on the BBG's alleged "New Format" were barred by res judicata, *id.* at *4–5; (2) Stanazai failed to exhaust any claims not arising out of Ayzai's October 2016 reorganization of the Afghan Service, *id.* at *5 and (3) Stanazai failed to demonstrate a prima facie claim of discrimination or retaliation as to his nonselection to the managing editor positions, *id.* at *6.

The Court declined to grant the BBG summary judgment in full, however, because it "construe[d] Stanazai's complaint as also raising a retaliation claim for being passed over for a senior editor position" because Stanazai's complaint referred to "several management positions". *Stanazai*, 2019 WL 1046296 at *7. Accordingly, the Court granted summary judgment to the BBG except as to the construed "retaliation claim for non-selection as a senior editor." *Id.*

Following discovery, Defendant moved for reconsideration, or, in the alternative, for summary judgment, arguing primarily that Stanazai had indicated during discovery that he did not intend to bring a retaliation claim related to the senior editor position. ECF No. 31. The Court denied the motion, concluding that Stanazai's deposition testimony and other discovery responses were not sufficient to establish an abandonment of any claim about the senior editor positions. Mem. Op. at 3–14 (Oct. 16, 2020), ECF No. 35. The Court also concluded that Defendant had not adequately met its burden of showing that Stanazai could not demonstrate the requisite causal connection between any denial of a senior editor position and retaliation. *Id.* at 14–16. The parties jointly proposed a schedule for Defendant to renew its motion for summary judgment, which the Court adopted and later extended. Pursuant thereto, Defendant respectfully moves for summary judgment on any claim Stanazai may have brought about the senior editor assignments.

## **STANDARD**

Summary judgment is appropriate when the pleadings and evidence demonstrate that there is "no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it could change the outcome of the litigation. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 243 (1986); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) ("[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial, and the moving party is entitled to judgment as a matter of law.") (citations, quotation marks, and alteration marks omitted).

And there is a "genuine issue" if the evidence is "such that a reasonable jury could return a verdict for the nonmoving party." *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006) (citation and quotation marks omitted).

The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once it meets that burden, the non-moving party can defeat summary judgment only by identifying "specific facts showing that there is a genuine issue for trial." *Id.* at 324. To do that, the non-moving party "may not rest on the mere allegation or denials of his pleading but must present affirmative evidence showing a genuine issue for trial," *Laningham v. U.S. Navy*, 813 F.2d 1236, 1241 (D.C. Cir. 1987), and such showing must involve more than "[t]he mere existence of a scintilla of evidence" in support of his claim, *Liberty Lobby*, 477 U.S. at 252.

## **ARGUMENT**

### I.    **Stanazai cannot make out a prima facie case of retaliation regarding the "senior editor" assignments.**

Stanazai cannot make out a prima facie case of retaliation regarding the "senior editor" assignments mentioned in Ayazi's October 7, 2016, email because there were never any open position for Stanazai to fill. Title VII of the Civil Rights Act of 1964 makes it "an unlawful employment practice for an employer to fail or refuse to hire . . . any individual . . . because of such individual's . . . national origin." 42 U.S.C. § 2000e-2(a). Title VII also makes it "an unlawful employment practice for an employer to discriminate against any . . . applicant[ ] for employment . . . because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" concerning employment discrimination. 42 U.S.C. § 2000e-3(a). Similarly, the Age Discrimination in Employment Act ("ADEA") makes it unlawful for an employer to take an adverse action against an employee "because of such individual's age," 29

U.S.C. § 623(a), or because such individual "has opposed any practice made unlawful by [§ 623],"
*id.* § 623(d).

Stanazai has not alleged, nor can he show, any direct evidence of discrimination or
retaliation prohibited by Title VII or the ADEA. Consequently, his claims must be analyzed under
framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05 (1973). Under
that framework, "the plaintiff must [first] establish a prima facie case of discrimination." *Reeves
v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000). The plaintiff can satisfy his initial
burden in a nonselection case by showing "(i) that he belongs to a racial minority; (ii) that he
applied and was qualified for a job for which the employer was seeking applicants; (iii) that,
despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained
open and the employer continued to seek applicants from persons of complainant's qualifications."
*McDonnell Douglas*, 411 U.S. at 802. Though the *McDonnell Douglas* developed in the context
of Title VII discrimination, it also applies to age-discrimination claims under the ADEA*, see Hall
v. Giant Food, Inc.*, 175 F.3d 1074, 1077 (D.C. Cir. 1999), and to retaliation claims, *see Mitchell
v. Baldrige*, 759 F.2d 80, 86 (D.C. Cir. 1985). In the retaliation context, however, a plaintiff "must
show: 1) that [he] engaged in a statutorily protected activity; 2) that the employer took an adverse
personnel action; and 3) that a causal connection existed between the two." *Mitchell*, 759 F.2d at
86 (internal quotation marks omitted).

As the Supreme Court has explained, the *McDonnell Douglas* framework "demand[s] that
the alleged discriminatee demonstrate at least that his rejection did not result from the two most
common legitimate reasons on which an employer might rely to reject a job applicant: an absolute
or relative lack of qualifications or the absence of a vacancy in the job sought." *Int'l Bhd. of
Teamsters v. United States*, 431 U.S. 324, 358 n. 44 (1977); *see also Texas Dep't of Cmty. Affairs*

*v. Burdine*, 450 U.S. 248, 253–54 (1981) ("The prima facie case serves an important function in the litigation: it eliminates the most common nondiscriminatory reasons for the plaintiff's rejection."). Thus, where a plaintiff fails to establish a vacancy in the position sought or that he met the minimum qualifications for that position, his prima facie case fails. *See Morgan v. Fed. Home Loan Mortg. Corp.*, 328 F.3d 647, 653 (D.C. Cir. 2003) (holding that applicant failed to make a prima facie case of discrimination or retaliation where one sought-after position was open only to internal candidates (which the applicant was not) and another sought-after position was already encumbered); *Yarber-Butler v. Billington*, 53 F. App'x 120, 120 (D.C. Cir. Dec. 13, 2002) ("Failure to promote is generally an adverse action, but not if there is no open position. In other words, if there is no vacancy in the job sought, the plaintiff cannot establish a prima facie case.") (internal quotation marks and citation omitted); *Hayslett v. Perry*, 332 F. Supp. 2d 93, 100 (D.D.C. 2004) ("[P]laintiff cites no evidence that there was an available position to which she could have been promoted. Lacking evidence of an available position, plaintiff cannot establish a prima facie case of employment discrimination based on non-promotion.") (citing *Morgan*, 328 F.3d at 653); *see also Moore v. Hagel*, No. 10-0632, 2013 WL 2289940, at *2 (D.D.C. May 24, 2013) ("Not being selected for a position for which she did not apply cannot be considered an adverse employment action [in a retaliation case]."); *Stoyanov v. Winter*, 643 F. Supp. 2d 4, 13 (D.D.C. 2009) ("[A] plaintiff cannot even establish a prima facie case of discriminatory or retaliatory failure to promote if he did not apply for the position."), *aff'd*, No. 09-5316, 2010 WL 605083 (D.C. Cir. Jan. 26, 2010).

Relying on these authorities, this Court previously granted summary judgment to Defendant on Stanazai's claim that the agency discriminated and retaliated against him by not selecting him as a managing editor. The Court noted that "where, as here, a plaintiff alleges

discrimination and retaliation based on failure to hire, his prima facie case fails if he cannot establish a vacancy in the position sought or that he met the minimum qualifications for that position." *Stanazai*, 2019 WL 1046296, at *6. The Court noted that the reorganization announced in Ayazi's October 7, 2016, email "did *not* create any vacant management positions" and that Stanazai could not have been assigned to the managing editor positions because they were GS-13 positions and Stanazai was a GS-12 employee. *Id.*

Any nonselection claim by Stanazai related to the senior editor assignments should meet the same fate as his claim about the managing editor positions. As with the managing editors, there were no new "senior editor" positions created as part of Ayazi's restructuring of the service and no competitive selection process took place to fill those assignments. SOF ¶ 12. The four individuals designated as senior editors in Ayazi's email retained the same grade and position as they had held prior to the restructuring. SOF ¶ 13. Further, the four individuals continued to perform the same duties and functions that they had been responsible for prior to the restructuring. SOF ¶ 14. Before Ayazi restructured the Service around the Dari and Pashto languages rather than broadcast medium, the four employees labelled "senior editors" by Ayazi were known as "team leaders" and were responsible for duties such as assisting with the assignment of tasks, finding news stories for broadcast, and copy editing. SOF ¶ 14. The four individuals performed those same duties for their respective language teams following the restructuring. SOF ¶ 14. Thus, there was no open positions to fill and no selection process associated with the individuals that Ayazi called "senior editors;" they were simply the same employees in the same position performing the same duties under a revised structure. Stanazai therefore cannot make out a prima facie case that the BBG retaliated against him by not selecting him for one of those assignments.

## II.     The agency had legitimate, nonretaliatory reasons for not naming Stanazai a "senior editor."

The agency's nonretaliatory reasons for not selecting Stanazai as a "senior editor" largely overlap with the reasons that Stanazai cannot make out a prima facie claim: he was not selected because there was no selection associated with those assignments. Stanazai cannot meet his burden of showing this argument to be pretext. Focus on the third prong of the *McDonnell-Douglas* analysis, *i.e.*, the evidence of pretext, is appropriate "only if the parties properly move past the second step." *Figueroa v. Pompeo*, 923 F.3d 1078, 1087 (D.C. Cir. 2019). To do that, "an employer at the second prong must proffer admissible evidence showing a legitimate, nondiscriminatory, clear, and reasonably specific explanation for its actions." *Id.* at 1092. The D.C. Circuit has laid out four factors that can be used to determine whether an employer's proffer is adequate: (1) "the employer must produce evidence that a factfinder may consider at trial (or a summary judgment proceeding)"; (2) if the factfinder believes the evidence, it "must reasonably be able to find that the employer's action was motivated by a nondiscriminatory reason"; (3) the "nondiscriminatory explanation must be . . . facially credible in light of the proffered evidence"; and (4) the evidence must present a "clear and reasonably specific explanation" such that the employee has "a full and fair opportunity to attack the explanation as pretextual." *Id.* at 1087 (citation and quotation marks omitted). By contrast, "offering a vague reason . . . is the equivalent of offering no reason at all." *Id.* at 1092.

Defendant easily clears this hurdle. The reason for not selecting Stanazai as a "senior editor" is specific and straightforward: there was no selection. Ayazi used the term "senior editor" to refer to employees who would remain in the same position and perform the same duties that they held prior to his restructuring of the service around language-based teams. SOF ¶¶ 12–14. The agency has also submitted admissible evidence that, if a fact finder were to believe it, would

support the proffered reason. A human resources specialist at the BBG, Leslie McKnight, reviewed the agency's personnel records and confirmed in a sworn declaration that there were no new positions and no promotions associated with Ayazi designating the four individuals as "senior editors" in his October 2016 email. McKnight Decl. ¶ 4. And Ibrahim Nasar, who held senior positions in the Afghan Service and was familiar with the roles and responsibilities of its staff, has submitted a declaration stating that the four individuals labelled by Ayazi as "senior editors" served as "team leaders" prior to the restructuring and continued to perform the same duties and functions after the restructuring as they had prior to the restructuring. Nasar Decl. ¶ 4.

If the Defendant meets the step-two threshold, the court "must resolve one central question," namely, whether "the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the employee[.]" *Brady v. Off. of Sergeant at Arms*, 520 F.3d 490, 494 (D.C. Cir. 2008). In resolving this central question, courts look to, inter alia, "(1) the plaintiff's prima facie case; (2) any evidence the plaintiff presents to attack the employer's proffered explanation for its actions; and (3) any further evidence of discrimination that may be available to the plaintiff (such as independent evidence of discriminatory statements or attitudes on the part of the employer)." *Hampton v. Vilsack*, 685 F.3d 1096, 1100 (D.C. Cir. 2012) (internal quotation marks omitted). To survive summary judgment based solely on evidence of pretext, a plaintiff must demonstrate that a "reasonable jury not only could disbelieve the employer's reasons, but also could conclude that the employer acted, at least in part, for a prohibited reason." *Walker v. Johnson*, 798 F.3d 1085, 1096 (D.C. Cir. 2015).

Stanazai will be unable to meet his burden. He provided no evidence or explanation in discovery tending to show that anyone at the agency retaliated against him when Ayazi designated

four individuals other than him to continue to perform their same duties as "senior editors." In fact, Stanazai repeatedly indicated in discovery that he did not wish to claim retaliation associated with the senior editor positions. Stanazai also disclaimed any retaliation in connection with the 2016 senior editor assignments in his responses to Defendant's interrogatories. One of Defendant's interrogatories directed Stanazai to identify each and every position that he did not receive and that forms the basis for his retaliation claims in this case. Pl.'s Resps. to Def.'s Interrogatories (Interrogatory No. 1), ECF No. 31-4. Stanazai's response to that interrogatory does not mention specifically mention the senior editor assignments from 2016. He lists several specific positions (none of which are the senior editor assignments described in Ayazi's restructuring email) as well as a catchall noting that Stanazai "applied for several management positions that became available." *Id.* The senior editor assignments do not fall within that catchall, however, because Stanazai did not "apply" for them. SOF ¶ 12. Stanazai also failed to identify any evidence whatsoever that might show that the BBG's reasons for not selecting him as a senior editor were retaliatory. When invited to supply such evidence, Stanzai responded simply: "the purpose of my non-selection was to retaliation against me for my protected activity. Pl.'s Resps. to Def.'s Interrogatories (Interrogatory No. 2), ECF No. 31-4. Because Stanazai is unable to proffer any evidence of retaliation, summary judgment should be awarded to Defendant.

*        *        *

12

## **CONCLUSION**

For the foregoing reasons, the Court should enter summary judgment in favor of Defendant.


Dated: April 21, 2021
        Washington, D.C.

Respectfully submitted,

CHANNING D. PHILLIPS, D.C. Bar #415793
Acting United States Attorney

BRIAN P. HUDAK
Acting Chief, Civil Division

By:   /s/ Johnny Walker
JOHNNY H. WALKER, D.C. Bar #991325
Assistant United States Attorney
555 4th Street, N.W.
Washington, District of Columbia 20530
Telephone: 202 252 2575
Email: johnny.walker@usdoj.gov

*Counsel for Defendant*